## STEVENS *v.* STEVENS

[No. 155, September Term, 1963.]

*Decided January 9, 1964.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT, MARBURY and SYBERT, JJ.

*Bernard M. Goldstein* for the appellant.

*Henry V. Wagner,* with whom were *Fair, Vidali & Wagner* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

A husband, unsuccessful in his petition seeking reduction of support payments to his former wife ordered by a divorce decree which adopted the terms of a separation agreement, asks us to reverse the order denying him relief.

The parties entered into a separation agreement dated October 21, 1954. It recited that they had ceased to live as husband and wife and had agreed "upon a settlement of all questions of Alimony, Alimony Pendente Lite, and all rights of every kind and character that have accrued, or may accrue, to each of the parties hereto against the other by reason of their marital relations." It was agreed that the husband should pay the wife twenty-five dollars a week "which payments shall cease upon the death or remarriage" of the wife. Each party released the other and his or her estate from "any debt or claims of any nature or kind now existing or hereafter arising * * * because of the fact the said parties are or were at any time, husband and wife * * *" and further released "all rights, or all claims" against the estate of the other "except such rights, or claims as are specifically given to either should there be any outstanding Last Will and Testament."

On October 21, 1958, the Circuit Court for Baltimore County granted the husband an absolute divorce from the wife on the ground of voluntary separation, and in the decree provided that the agreement between the parties dated October 21, 1954, "be

and the same is hereby approved to the same extent as if all provisions of said agreement were outlined in detail herein."

In 1959 the husband filed a "Petition for Reduction of Alimony" on the claim that his income had dropped some one hundred thirty dollars a month. The wife agreed that the provision of paragraph six of the separation agreement, calling for the husband to maintain existing life insurance policies without change of beneficiary could be deleted from the agreement, and relief was denied as to the amount of support on the recommendation of the Master.

In 1962 another petition seeking a reduction in the amount of the weekly payments was filed by the husband on the basis of an alleged reduction in pay of some $100.00 a month from that he enjoyed at the time of the decree, his remarriage and an inheritance of some $38,000 the wife had received.

The testimony at the hearing on the 1962 petition showed that at the time of the divorce the husband made about six hundred dollars a month and the wife was employed at a salary of approximately forty-five dollars a week take home pay and had no other income. The husband's gross earnings in 1959 were $9,377.21, in 1960 they were $8,148.62, in 1961 about the same, and in 1962 were $8,900.00. Also he no longer had to pay $15.00 a week for the support of the couple's daughter, she having become emancipated under the definition in the agreement. He had a bank account of $5,000 and owned a ten-acre tract of land near Monkton.

The wife's salary has not changed. She had inherited some $38,000 from the husband's father, but had paid $4,500 of this to the husband in compromise of his claim to all of the inheritance. Payments for inheritance taxes and counsel fees further reduced the inheritance to a net of about $30,000.

Judge Raine said that because of the $30,000 inheritance of the wife he would be inclined to lower the support payments if he could, but that he had concluded the court was without power to modify the support provision of the separation agreement. He said "Article 16, Section 28, provides that an agreement made between husband and wife respecting support and maintenance shall be valid, binding and enforceable to every intent and purpose. It is a contradiction in terms for the Court

to hold that a binding agreement can be modified. Rule S-77b provides that an agreement of the type under consideration may be incorporated into a divorce decree, but the rule does not purport to give the court any power of modification."

As we see it the court had the power to reduce the amount for the maintenance of the wife it would order and enforce as alimony but the circumstances do not suggest that a reduction is warranted. It has long been established in Maryland that an equity court can modify a decree providing for the payment of alimony when changed circumstances indicate that it should be modified, and that the power is not different where the decree approved the provisions of an agreement between the parties for the payment of a periodic sum, meeting the definition of alimony. In *Emerson v. Emerson*, 120 Md. 584, 596-597, which held that an alimony decree based on a separation agreement could be modified, the Court, referring to such agreements, said:

> "The law has generally regarded all agreements, made during the pending of the suit for divorce, as void, as being against public policy. Too easy is it for the parties to come to such an arrangement on property division as to amount to collusion on the question of the divorce itself. The practice is common, nevertheless, for Courts to incorporate in their decrees provisions as to alimony which have been agreed to by the parties. The Court, however, must be satisfied that the agreement is not the result of collusion on the main point of the divorce. The practice is to submit the agreement to the Court, and if the Court is satisfied that it is a proper settlement, it will receive the sanction of a decree. * * * Then the validity of the award depends not upon the agreement, but upon the judgment or decree."

Sec. 28 of Art. 16 of the Code (1957), was made the law by Ch. 220 of the Laws of 1931. A reason for its passage is suggested by the reference to the possible invalidity of agreements as to alimony in the *Emerson* opinion. In *Cronin v. Heb-*

*ditch,* 195 Md. 607, 615, Judge Markell said for the majority of the Court:

"Both court and counsel below seem to have assumed that enactment of the Act of 1931 was due to the decision of this court in *Harrison v. Harrison,* 160 Md. 378, 153 A. 58. If we make the same assumption, we are not thereby greatly aided in construing the act, since neither the *Harrison* case nor the act made any marked change in pre-existing law.

"It has long been held that a separation agreement, (*i.e.,* not an agreement to separate, as such, but an agreement as to support or property rights during an existing or contemplated separation) may be an acquiescence in abandonment and therefore a bar to a divorce on that ground, *Barclay v. Barclay,* 98 Md. 366, 56 A. 804, but is not *per se* a bar to a subsequent suit for divorce. *Lemmert v. Lemmert,* 103 Md. 57, 63 A. 380. The Act of 1931 is in terms in accord with the *Lemmert* case; in the recent case of *Kershaw v. Kershaw,* 195 Md. 307, 73 A. 2d 223, we in effect followed the *Barclay* case in denying a divorce to a spouse living separate pursuant to a separation agreement— for less than the statutory period under the Act of 1937, ch. 396, or the Act of 1947, ch. 240, (Art. 16, sec. 40, 1939 and 1947), Supp. In *Campbell v. Campbell,* 174 Md. 229, 241, 198 A. 414, 419, 116 A. L. R. 939, it was said, 'In *Melson v. Melson, supra,* 151 Md. 196, at page 205, 134 A. 136, 139, it was said in the opinion of the court, as delivered by Judge Parke: "The agreement of separation was valid as the agreed equivalent of future maintenance by the husband of the wife, although it was invalid as a contract providing for the relinquishment of the right and duty of cohabitation of the Spouses", The Act of 1931, ch. 220, (Code [Supp. 1935,] art. 16, sec. 39A), provides: [quoting the Act in full].' Quotation of the Act of 1931 in this context indicates that it did not materially change the law as stated in the *Melson* case."

There followed the quotation from the *Emerson* case which we quoted earlier.

Both before and since the Act of 1931, the authorities have left no real doubt that an equity court could modify a decree directing payment of alimony whether or not the decree was based on an agreement between the parties which the court found fair and equitable (as Judge Raine found in this case when he granted the divorce) and made part of the decree. *Emerson v. Emerson, supra; Knabe v. Knabe*, 176 Md. 606, 613; *Cronin v. Hebditch, supra; Myerberg, The Practical Aspects of Divorce Practice*, 88 (2d ed. 1961).

The separation agreement in the case before us establishes that the weekly payments not only were referred to in the agreement as alimony but were alimony in the true sense, that is, periodic maintenance afforded the wife or former wife to continue during the joint lives of husband and wife or as long as they remain separate. *Foote v. Foote*, 190 Md. 171. The present agreement expressly provides for periodic payments for the maintenance and support of the wife to "cease upon the death or remarriage" of the lady. Another provision of the agreement insures that the payments would cease upon the husband's death by the wife's release of the husband's estate from all "claims of any nature or kind now existing or hereinafter arising * * * because of the fact that the said parties are or were at any time, husband and wife * * *." Cf. *Dickey v. Dickey*, 154 Md. 675.

Since the amount of maintenance called for by the decree in its adoption of the agreement was alimony, it is subject to the usual controls a court of equity has over the amount and payment of alimony.

At the time of the divorce decree the wife's gross annual salary of $2,860 was $4,340 less than the husband's annual salary of $7,200. Neither had other income. At the time of the current hearing below, her salary was unchanged and the latest figures produced showed his earnings were some $1,700 greater. In addition, he had available the $780.00 a year he had formerly paid for the support of his daughter. He had the income from his $5,000 in a savings account (say $200.00). The wife's additional income was approximately $1,200 from

the $30,000 she received from the husband's father. Her total income was $4,060 and his total income was $9,100 (and in the consideration of the question before us might be treated as $780.00 more, or $9,880). The difference between their real incomes is now $5,820, taking the $780.00 into account, or $5,040 without regard to the $780.00. The alimony originally approved was a relatively small percentage of the husband's income, about 16%, and now is just over 13%.

We can see no persuasive reason why the amount of the alimony ordered to be paid by the husband should be reduced.

*Order affirmed, costs to be paid by the appellant.*