## BELLOFATTO *v.* BELLOFATTO

[No. 74, September Term, 1966.]

*Decided February 9, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, OPPENHEIMER, BARNES and FINAN, JJ.

*Russell W. Shipley* for appellant.

*Marion West* for appellee.

BARNES, J., delivered the opinion of the Court.

The important facts in this case are not disputed. The appellant, Vincent A. Bellofatto (husband) was married to the appellee, Grace L. Bellofatto (wife), on April 18, 1951. No children were born of the marriage. After a reasonably happy marriage, the wife discovered that her husband was "running around with women" and on January 13, 1963, the husband and wife separated. This separation was by mutual agreement and the husband and wife executed a written separation agreement on August 27, 1963, reciting that "certain unhappy differences have arisen between them, by reason whereof they

agreed to and did separate on January 13, 1963, and hereby agree to continue to live separate and apart from each other." The separation agreement was prepared at the request of the wife by her counsel.

The written agreement, under seal, also provided that it should be lawful for each party to live separate and apart "as if each were sole and unmarried" and reside where each pleased and to conduct any business "without any interference, direct or indirect, on the part of the other." The agreement further provided that the home of the parties at Capitol Heights should become the property of the wife, together with the furnishings, appliances and equipment in the home, and that the 1959 Chevrolet automobile owned by the parties (actually titled in the name of the husband alone) should be the property of the wife. There was an agreement that neither party would contract debts and obligations in the name of the other party. After reciting that the wife earned $30 a week and the husband $125 a week, the written agreement provided the following:

> "7. That the party of the first part [the husband] shall pay as support to the party of the second part [the wife] the sum of $25.00 per week, and she will take her own income tax deduction."

There was also a provision that if the parties returned to cohabitation, the "agreement shall become immediately void and of no effect thereafter."

Title to the Capitol Heights home, its furnishings, appliances and equipment and the Chevrolet automobile were transferred to the wife by the husband in accordance with the separation agreement.

On July 9, 1965, the wife filed in the Circuit Court for Prince George's County a bill of complaint for alimony, counsel fees, court costs and other relief. This bill of complaint was filed by the wife's counsel who had also prepared the separation agreement. The wife alleged in her bill of complaint that the husband had abandoned and deserted her on January 13, 1963 with the intention to live no longer with her. She also alleged that the husband earned $150 a week and that she was unemployed and physically unable to work or to pay counsel fees and costs.

The husband was served on July 16, 1965 with the subpoena issued on July 9, 1965 and a copy of the bill of complaint. The husband testified, without contradiction, that he left the subpoena and copy of the bill of complaint with his counsel with instructions to take care of the matter. The subpoena indicated that an answer was required fifteen days after the return day, the first Monday in August. The counsel who was to represent the husband, however, did nothing about the matter as a consequence of which no answer was filed and counsel for the wife obtained a decree pro confesso on August 18, 1965. Testimony was taken before one of the Standing Examiners on August 24, 1965. The wife testified in regard to the separation on January 13, 1963 indicating culpatory reasons for the separation, that the parties had never resumed cohabitation and that there was no reasonable hope of a reconciliation. She did not mention the separation agreement but did testify as follows:

"Q. Did you enter into any agreement with him as to any payments of support since your separation?
"A. Yes, I asked him for twenty-five dollars a week.
"Q. Did he agree to it?
"A. Yes."

The wife also testified that she was then employed and was earning $25 a week and that her husband "should be making at least $200 or more." She then testified:

"Q. Are you satisfied with the twenty-five a week that he agreed to pay you, or do you feel you should have more?
"A. I feel I should have more."

She suggested that the husband should pay her $50 a week.

Other witnesses testified that the husband "ran around," that he admitted this, that the separation occurred approximately two and one-half years prior to the time testimony was taken and that there was little likelihood of a reconciliation.

On September 21, 1965, the Chancellor signed a decree awarding the wife $50 "per week as alimony for herself," awarded the wife's counsel a counsel fee for $200 and ordered that the husband pay the costs of suit.

Thereafter, a copy of this decree was mailed to the husband who then employed his present counsel who, on October 22, 1965, filed a motion to strike, vacate or modify the final decree, alleging the execution of the separation agreement to pay the wife $25 a week, the husband's financial inability to pay more and the reasons for the husband's failure to answer the bill of complaint and to testify at the original hearing. It was prayed that (1) the decree of September 21 be set aside and the husband be given an opportunity to answer or, in the alternative, the case be set for hearing before the court; (2) the court modify the decree to reduce the required payment of $50 a week to $25 a week, and (3) grant other relief. The Chancellor on October 22 signed an order that the motion be heard in open court on November 18, 1965 at 10:00 a.m., provided a copy of the order be served on counsel for the wife in accordance with the Maryland Rules. This service was made.

The hearing on the motion was heard on December 20, 1965. The husband testified in regard to the execution of the separation agreement of August 27, 1963 at the wife's request, its preparation by the wife's counsel and the transfer of title to the house and automobile in accordance with the separation agreement. He testified in regard to his financial situation and gave the details in regard to his delivery of the original subpoena and copy of the bill of complaint to his original counsel. The separation agreement was introduced into evidence as an exhibit. The wife, in her testimony, admitted the execution of the separation agreement, the preparation of it by her counsel, the transfer of title to the house and automobile to her, stating "I said: 'Give me the home and car and you can have your freedom with the woman.'"

At the conclusion of the hearing of December 20, the Chancellor denied the motion to strike, vacate or modify the decree of September 21, stating:

"* * * the Court is of the opinion that the provisions of the contract amount to alimony, and that the Court would have the right to revise upward or downward said amount. The order of the Court, dated the 21st of September 1965, will not be disturbed, and the mo-

tion to strike, vacate or modify final decree will be denied."

An appeal was entered to this Court on January 19, 1966.

In our opinion, the Chancellor was in error in concluding that the provision for support in the separation agreement was "alimony."

In *Bebermeyer v. Bebermeyer*, 241 Md. 72, 77, 215 A. 2d 463 (1965), we reviewed the Maryland law in regard to the distinction between alimony and provisions for support in separation agreements. We relied on and quoted from the opinion in *Schroeder v. Schroeder*, 234 Md. 462, 200 A. 2d 42 (1964) as follows:

> "In *Schroeder* the separation agreement referred to the payment of $25.00 a week to the wife as 'permanent alimony, subject to the further Order of the Court,' and the decree awarded the wife $25.00 a week 'as alimony.' We held that notwithstanding this language, the weekly payments were not alimony as there was no provision that the payments were to continue only during the joint lives of the parties."

As in *Bebermeyer* and *Schroeder*, the separation agreement in the present case did not limit the husband's payments to the joint lives of the spouses. The support payment is not referred to in the separation agreement as "alimony" and there is no provision in the agreement that the payments should be subject to modification by the Court. As we pointed out in *Schroeder*, even if such a provision had been included, it would not have resulted in payment being alimony in view of the fact that the husband's payments were not limited to the joint lives of the spouses. See also *Woodham v. Woodham*, 235 Md. 356, 201 A. 2d 674 (1964).

The wife contends that there was no specific provision in the separation agreement indicating that the personal representatives of the parties should be bound. We are of the opinion that taking the agreement as a whole, with the provision for the conveyance of interests in both real and personal property,[1] it

---

1. The testimony indicated that the house, furniture and automobile were all of the assets of the parties.

was the intention of the parties that their personal representatives should be bound by the separation agreement. The separation agreement was intended by the parties to be a complete and final settlement of their property and marital rights including the husband's obligations for the wife's support. If this were in doubt, we would construe the contract against the wife as the separation agreement was prepared at her request and by her attorney. See *Joseph F. Hughes & Co., Inc. v. Pioneer Fireproof Door Corp.*, 230 Md. 36, 185 A. 2d 383 (1962).

In addition to the absence of a provision in the separation agreement that the obligation to make the support payments was limited to the joint lives of the spouses, the separation agreement does not provide that the support payments cease upon the remarriage of the wife. It is clear in Maryland that a support payment which would continue after the remarriage of a spouse cannot be considered to be alimony. *Knabe v. Knabe*, 176 Md. 606, 612-13, 6 A. 2d 366, 124 A.L.R. 1317 (1939).

We conclude that the support payments of $25 a week provided for in the separation agreement were not alimony and the Chancellor was in error in considering them as such. The Chancellor had no power to increase or decrease these support payments as this would modify the separation agreement between the parties. See *Grossman v. Grossman*, 234 Md. 139, 144, 198 A. 2d 260, 263 (1964). See also *Melson v. Melson*, 151 Md. 196, 134 Atl. 136 (1926). There was no suggestion by the Chancellor that the husband did not act promptly to place the correct facts before the court as soon as the husband learned of the decree of September 21, 1965 and obtained other counsel to represent him. In our opinion, the Chancellor should have modified paragraph one of the decree of September 21, 1965 to have incorporated in it the provisions for support provided for in paragraph 7 of the separation agreement of August 27, 1963. There was testimony by the wife that the husband paid the weekly payments of $25 pursuant to the separation agreement for a while and that thereafter he did not make the payments allegedly because "he didn't have any money." The Chancellor should after further testimony taken upon the remand of the case enter up a monetary decree for the amount of any arrearages in payments under the separation agreement.

There has been no challenge in this Court of paragraph two of the decree of September 21, 1965, and this portion of the decree will be affirmed.

> *Decree of September 21, 1965 affirmed in part and reversed in part and the case will be remanded for further proceedings in accordance with this opinion; the costs will be paid by the appellant.*