# HERMAN GOLDBERG *v.* MILDRED J. GOLDBERG

[No. 54, September Term, 1980.]

*Decided April 24, 1981.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Charles Norman Shaffer,* with whom were *Peter I. J. Davis* and *Michael J. Grady* on the brief, for appellant.

*A. Howard Metro,* with whom were *Ronald E. Lyons* and *Goldman, Walker, Greenfeig & Metro, Chartered* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

In this case, we are called upon to interpret the support provisions contained in an enrolled decree which divorced

the parties to this appeal *a vinculo matrimonii* more than a decade ago. The decree, entered in the Circuit Court for Montgomery County (Pugh, J.) on January 11, 1968, in addition to its pronouncement of divorce, incorporated by reference selected provisions of a property settlement and child custody agreement executed by the parties several months prior to the institution of the divorce suit. The issues in this appeal focus on the interaction between those terms of the settlement agreement which were incorporated into the decree and those left out of it.

In early November, 1967, petitioner Herman Goldberg and his wife, respondent Mildred Goldberg, recognizing that "certain unfortunate differences" portended the end of their twenty-seven year marriage, executed a property settlement and child custody agreement. Paragraph one of the understanding declared that:

> [t]he husband shall pay to the wife for her support and maintenance the sum of $150.00 per week [1]. . . . Said payments shall terminate upon the death of the husband or of the wife, whichever shall occur first, or, in the event of the subsequent remarriage of the wife, then upon such remarriage.

In subsequent paragraphs, the husband agreed to grant to the wife custody of the parties' two children; to provide $125.00 per month as support for each child; to "keep and maintain a group hospitalization policy with surgical benefits for . . . the wife, and . . . children until each of them becomes twenty-one years of age;" to pay college tuition for the children; to "provide and maintain a policy of life insurance, in which the wife is designated as beneficiary, in the amount of $10,000.00;" to "convey to the wife his interest" in the family home; to "giv[e] to the wife as her sole and separate property" all their furniture and other personalty; to "divest himself" of his interest in real property which he owned in common with his mother-in-law; and to

---

1. This provision was later amended by agreement to require payment of $650.00 per month.

pay the wife $2,500.00 cash as well as her attorney's fees. In exchange for these promises, the wife, for her part, agreed in paragraph two:

> that the . . . payments [set forth in paragraph one of the agreement] are adequate for her support and maintenance and that she accepts them in lieu of any other claim that she has or may have against the husband for support, maintenance, alimony or other claim upon the husband for her right to be maintained as the wife of the husband.

In addition, Mr. and Mrs. Goldberg relinquished all rights which each had in the property or estate of the other, and both recognized that "they have accepted the benefits of [the] agreement in lieu not only of their rights against each other in and to the property of each other during the lifetime of each, but in lieu of any right that either may have against the estate of the other. . . ." At the request of the parties, the chancellor incorporated by reference into the decree of divorce paragraphs of the property settlement agreement numbered one (the quoted provision for the support for the wife), three (providing for child support), nine (granting child custody to the wife), and ten (terminating child support should the wife cease to have custody). There was no request by the parties that the remaining paragraphs, including number two, be incorporated into the decree, nor were they.

On June 21, 1978, ten years after the decree in the divorce action was entered, Mrs. Goldberg petitioned the court in those same proceedings for an increase of alimony. By his motion raising preliminary objection, Mr. Goldberg urged that since the property settlement agreement was intended to be the final disposition of the parties' rights and obligations, and since the provisions for spousal support in paragraph one of the agreement do not constitute technical alimony,[2] the chancellor was without authority to modify

---

2. The generic term "alimony" is unfortunately often used by bench and bar to express all forms of spousal support, whether payable under decree or agreement and regardless of the power of the court of equity to modify them. This expanded use of the term alimony has caused the coinage of the

the payments. When the husband's preliminary objection was overruled, the respondent's petition was presented to the court's domestic relations master for consideration. Following his determination that "[p]aragraph [o]ne [of the separation agreement once incorporated into the decree] clearly meets the criteria of technical alimony," the master recommended that the amount payable under the wife support provision of the 1968 divorce decree be increased to provide that the husband pay $1,010.00 per month.[3] This recommendation was accepted and effectuated by order of the trial court, and Mr. Goldberg appealed to the Court of Special Appeals. That appellate court, in an unreported opinion, agreed that the wife support provision of the settlement compact contemplated the payment of technical alimony, and since, in that context, the paragraph was incorporated into the divorce decree, its terms are properly subject to subsequent judicial modification. The intermediate appellate court cautioned, however, that "had paragraph two [waiving alimony] been incorporated into the divorce decree . . . [that provision] may well [have acted] to bar the modification in question." This Court granted certiorari to examine the propriety of the ruling. Since we now determine that the divorce decree made no provision for technical alimony, reversal is required.[4]

---

phrase "technical alimony" when referring to a periodic allowance for spousal support payable under judicial decree which terminates on the death of either spouse or on the remarriage of the spouse receiving the payments. Brown v. Brown, 278 Md. 672, 675, 366 A.2d 18, 20 (1976); see Md. Code (1957, 1981 Repl. Vol.), Art. 16, § 1 (a).

3. Although the master suggested that his determination (the allowance is technical alimony) was "a finding of fact," we conclude that the issue is predominantly one of law. Consequently, our review of this determination is plenary.

4. The issue whether the court which divorced the Goldbergs was authorized to order technical alimony in the face of an agreement between them which precluded such an allowance is not before us. See Md. Code (1957, 1966 Repl. Vol. and 1981 Repl. Vol.), Art. 16, § 28 (separation agreement between husband and wife "shall be valid, binding and enforceable to every intent and purpose . . ."); Rice v. Rice, 246 Md. 212, 216-18, 227 A.2d 742, 744-45 (1967) (chancellor "had no right to modify" an agreement between the parties limiting support payments by awarding alimony); Melson v. Melson, 151 Md. 195, 205, 134 A. 136, 139 (1926) (separation agreement "when fully performed by the husband, bar[s] [wife] from any other form of maintenance than those agreed"). Since neither party appealed from the entry of the original decree of divorce, they are

We commence our review of the circuit court's order increasing the amount of support payments with the observation, disputed by neither party here, that the correctness of the chancellor's action turns wholly on whether the monies paid to Mrs. Goldberg under the 1968 decree are properly viewed as technical alimony. This is so because a decretal award of alimony of this type, whether or not contemplated in a separation agreement of the parties, *Stevens v. Stevens,* 233 Md. 279, 284, 196 A.2d 447, 449 (1964), is always subject to judicial modification in light of changed circumstances. *Heinmuller v. Heinmuller,* 257 Md. 672, 676-77, 264 A.2d 847, 850 (1970). Other spousal support payments, however, being contractual in nature, are not subject to change absent assent of the parties, notwithstanding the fact that they have been incorporated into a divorce decree. *Bellofatto v. Bellofatto,* 245 Md. 379, 386, 226 A.2d 313, 315-16 (1967); *Schroeder v. Schroeder,* 234 Md. 462, 464-65, 200 A.2d 42, 43-44 (1964); *Dickey v. Dickey,* 154 Md. 675, 678, 141 A. 387, 388-89 (1928).[5] Technical alimony can only be provided by decree of court, note 2, *supra;* but since Maryland Rule S77 b authorizes the incorporation into the divorce decree of a settlement executed by the spouses, the situation often arises where the parties by their agreement contemplate an award of technical alimony which does not attain that legal status until the understanding receives judicial imprimatur through incorporation into the decree. *Heinmuller v. Heinmuller, supra* at 677, 264 A.2d at 850; *Stevens v. Stevens, supra* at 284, 196 A.2d at 450. However, where the

---

bound by that adjudication, whatever its meaning. Hughes v. Hughes, 216 Md. 374, 377-79, 140 A.2d 649, 651-52 (1958). Consequently, the only matter to be settled by our review is the proper interpretation to be given the original decree.

5. The Legislature, however, has provided that "any provision in [any] deed or agreement [made between husband and wife after April 13, 1976,] in respect to alimony, support and maintenance ... is subject to modification by the court ... regardless of the manner in which the provisions with respect to [these payments] are expressed," unless there is a waiver or a specific statement that the payments are not subject to any court modification. Md. Code (1957, 1981 Repl. Vol.), Art. 16, § 28; 1976 Laws of Maryland, ch. 170, §§ 2, 3. Since the settlement agreement and divorce decree we here consider were finalized long before this statute became operative, we evaluate this case using the pre-existing principles.

parties do not intend an award of technical (and thus modifiable) alimony, but rather provide for contractual spousal support in the separation compact, the fact that the agreement, or that provision of it, is incorporated into a decree does not operate to transform the contractual payments into technical alimony. For examples of the analysis used to determine whether spousal payments agreed upon by the parties which were later inserted into a decree constitute technical alimony, see, *e.g., Brown v. Brown,* 278 Md. 672, 366 A.2d 18 (1976); *Heinmuller v. Heinmuller, supra; Paylor v. Paylor,* 254 Md. 154, 253 A.2d 911 (1969); *Bellofatto v. Bellofatto, supra; Bebermeyer v. Bebermeyer,* 241 Md. 72, 215 A.2d 463 (1965); *Woodham v. Woodham,* 235 Md. 356, 201 A.2d 674 (1964); *Schroeder v. Schroeder, supra; Stevens v. Stevens, supra; Dickey v. Dickey, supra.*

Given these principles, Mrs. Goldberg asserts that, since the wording of the support provision contained in paragraph one of the agreement "conforms in every detail with the definition of technical alimony," the decree incorporating that paragraph of the contract is subject to judicial modification, and if the language of paragraph two waiving alimony, which was not incorporated into the decree, is deemed to be inconsistent, then it was "superseded by, and merged into, the decree." This reasoning, in our view, is faulty *ab initio,* for the premise on which respondent rests her argument, that the separation agreement called for an award of technical alimony, is incorrect. Accordingly, the chancellor did not "[order] the [husband] to pay technical alimony," but rather merely incorporated into the divorce decree, at the request of the parties, selected provisions of their agreement.[6] It is true that, in determining whether

---

6. We see no special significance in the incorporation by the chancellor, at the request of the parties, of these particular contractual provisions. Once made a part of the decree, contractual obligations become subject to the enforcement powers of the court of equity, not the least of which of course is the contempt power. *See* Speckler v. Speckler, 256 Md. 635, 261 A.2d 466 (1970); Soldano v. Soldano, 258 Md. 145, 265 A.2d 263 (1970). In this case, there was no need to subject all the provisions of the separation agreement to the court's enforcement authority, since most of them, indeed all but the four

technical alimony has been awarded, the terms of the decree in the first instance should be consulted and if unambiguous are normally controlling. From this, it does not necessarily follow, however, that the unincorporated provisions of a separation agreement play no role in, and thus may not be examined as part of, this interpretative inquiry. For example, in this case, the divorce decree did no more than incorporate, simply by reference to the paragraph numbers of the agreement, four provisions contained in that understanding; thus, examining the divorce decree alone to ascertain the nature of the payments ordered is uninformative without reference to the agreement. *See, e.g., Dickey v. Dickey, supra; Schroeder v. Schroeder, supra; Stevens v. Stevens, supra.* In looking to the settlement accord to embellish the terms of the divorce decree, a court subsequently interpreting that order should not myopically focus on just those contract provisions incorporated by reference into it; rather, it seems obvious to us that the entire contract should ordinarily be examined to determine the legal effect of the decretal award. To hold otherwise would lead to untenable results. As an illustration, if in this case, unincorporated paragraph two, instead of waiving alimony, defined "support and maintenance" as used in paragraph one to be contractual, non-technical, non-modifiable, spousal support, petitioner's approach would obscure the clear meaning of paragraph one as elucidated by the definition, resulting in an interpretation of the "support and maintenance" language in a vacuum, unaided by the crucial contractual definition. Distinct in their variation from respondent's suggested analysis, our decisions make it clear that the entire agreement can be consulted in this context. Thus, in *Schroeder v. Schroeder, supra* at 463-65, 200 A.2d at 43-44, this Court, in concluding that the chancellor did not award technical alimony, examined the whole agreement, including a provision that awarded as "permanent alimony" an amount equal to the

---

paragraphs incorporated, represented either mere affirmations of intent or fully executed promises at the time of the divorce.

"alimony" later ordered to be paid under the decree. *See Bellofatto v. Bellofatto, supra* at 385-86, 226 A.2d at 316 ("taking the agreement as a whole," the periodic support payments contained therein were not modifiable alimony); *Stevens v. Stevens, supra* at 284, 196 A.2d at 450 (conclusion that separation agreement contemplated technical alimony based upon interpretation of entire contract).

Since the two lower courts should not have focused only on those provisions incorporated into the Goldberg's divorce decree, we turn briefly to set out the rules governing interpretation of contracts which influence the disposition of this case. Property settlement agreements, as all other contracts scrutinized under the law of this State, are subject to interpretation in light of the settled and oft-repeated principles of objective construction. *Orkin v. Jacobson,* 274 Md. 124, 128, 332 A.2d 901, 903 (1975). "The written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite understanding. . . ." *Slice v. Carozza Prop., Inc.,* 215 Md. 357, 368, 137 A.2d 687, 693 (1958). "[W]here a contract is plain and unambiguous, there is no room for construction, and it must be presumed that the parties meant what they expressed." *Kasten Constr. v. Rod Enterprises,* 268 Md. 318, 328, 301 A.2d 12, 18 (1973); *Little v. First Federated Life,* 267 Md. 1, 6, 296 A.2d 372, 375 (1972); *Devereux v. Berger,* 253 Md. 264, 269, 252 A.2d 469, 471 (1969). Thus, when interpreting a separation agreement, this Court is "bound to give effect to the plain meaning of the language used." *Woodham v. Woodham, supra* at 360, 201 A.2d at 676; *Sands v. Sands,* 252 Md. 137, 249 A.2d 187 (1969).

We think the words of the agreement between the Goldbergs present no ambiguity and are expressive of their respective rights and obligations. It is entirely permissible for a party to waive his or her claim to alimony as long as this release is supported by valid consideration, *Frank v. Frank,* 207 Md. 124, 113 A.2d 411 (1955); *Frank v. Frank,*

203 Md. 361, 101 A.2d 224 (1953), and from our review of the terms of the agreement, this is precisely what Mrs. Goldberg did here. No one questions the adequacy of the consideration passing from the husband to the wife in exchange for her waiver of "alimony" expressed in paragraph two. Rather, the wife asserts that the provision for her support contained in paragraph one is "neatly packaged" as technical alimony, and that her acknowledgement in paragraph two that she accepts the allowance "in lieu of any other claim for support, maintenance [or] alimony" is not inconsistent with paragraph one because the latter refers to some other "species of legal demand." The inconsistency which Mrs. Goldberg perceives, and therefore attempts to explain, however, is caused solely by her isolated analysis of paragraph one of the agreement. The intent of the parties is pellucid when that provision is properly viewed as one portion of the composite whole contract. The all-encompassing waiver by Mrs. Goldberg of further support-type claims against the petitioner (other than that contained in paragraph one) embraces by its terms all forms of spousal support, including technical alimony. Paragraph one, which provides for the "support and maintenance" of the wife, contains neither a specific reference to technical alimony nor any other language indicating that the parties contemplated such an award. Indeed, it is not without significance that the parties chose not to use the term alimony when denominating in paragraph one the support obligation of the husband. If the parties had intended the agreement to authorize a court award of modifiable alimony, they doubtless would not have included a specific waiver by the wife of "any other claim ... for ... alimony" in their agreement. The subsequent incorporation of selected portions of the property settlement agreement into a decree of divorce did not transmogrify what is clearly contractual spousal support into court ordered technical alimony.[7]

---

7. It may be suggested that the language used by the Court of Special Appeals in Schmertz v. Schmertz, 32 Md. App. 639, 363 A.2d 580 (1976), does not comport with what we decide here; if so, to the extent that this is true, we disapprove of what is there said.

Consequently, the circuit court exceeded its authority in modifying the payments provided for in the agreement.

> *Judgment of the Court of Special Appeals reversed and case remanded to that court with instructions to vacate the decree of the Circuit Court for Montgomery County with direction to dismiss the petition.*
>
> *Costs to be paid by the respondent.*