541 A.2d 1331

**Erwin MENDELSON**

v.

**Helene MENDELSON.**

**No. 1421, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

June 9, 1988.

---

Shelby F. Mitchell (Leonard C. Greenebaum and Sachs, Greenebaum & Tayler on the brief), Chevy Chase, for appellant.

Sue Ann Mahaffey, Rockville, for appellee.

Argued Before GILBERT, C.J., and BLOOM and KARWACKI, JJ.

BLOOM, Judge.

Appellant, Erwin Mendelson, and appellee, Helene Mendelson, were divorced by a decree of the Circuit Court for Montgomery County on 30 March 1977. That decree incor-

porated but did not merge the separation and property settlement agreement executed by the parties on 14 July 1976, over a year after they separated.

Appellant paid spousal support to appellee, in accordance with their agreement, for approximately 9 years. In November 1985, however, he petitioned the court to terminate or reduce his support obligation because of appellee's "flagrant misconduct." Aggrieved by the circuit court's denial of his petition, appellant brought this appeal. Appellant must remain aggrieved; we shall affirm the circuit court's decision.

## Facts

The parties were married in June 1957; they separated in 1975. On 14 July 1976, they entered into a separation and property settlement agreement, which provided, *inter alia,* that appellant would pay appellee "as alimony Twenty-two Thousand Eight Hundred Dollars ($22,800) annually in twelve (12) equal monthly payments of One Thousand Nine Hundred Dollars ($1,900) payable on the first day of each month. . . ." This contractual spousal support was to be adjusted each August according to cost of living increases as set forth by the Bureau of Labor Statistics of the United States Department of Labor; it was to "cease upon the death of either party or upon the remarriage of the [appellee]." The agreement further stated that the appellee waived "any cause of action she may have to seek additional alimony or change the alimony provisions provided for in this Agreement, provided that the [appellant] does not breach . . . [the] Agreement." The final provision concerning the spousal support dealt with the circumstances of how the support could be reduced. The agreement specified that if the appellant became disabled or retired at age 60 or thereafter, "the parties shall attempt to agree on alimony . . . payments that are equitable in light of the [appellant's] changed financial resources"; should the parties be unable to reach such an agreement, then "either party may apply

to a court of competent jurisdiction for such relief as may be appropriate."

Subsequent to the divorce, appellee met and developed a close relationship with one Manuel Epstein, who moved into appellee's home in 1981. Mr. Epstein pays some of the household expenses and generally maintains the home. Appellee covers the balance of the expenses.

On 22 November 1985, appellant filed a petition to reduce or terminate the contractual spousal support, asserting that a reduction or termination of the support was warranted because appellee's relationship with Epstein constituted a significant change in appellee's financial circumstances, thereby negating appellee's need for the support. In her answer, appellee admitted her relationship with Epstein but denied that the relationship lessened her need for the support or significantly changed her financial situation.

On May 5, 1987, the case came before a Domestic Relations Master. At the conclusion of appellant's case, appellee moved for dismissal, citing the failure of appellant to show a substantial change in financial circumstances. The master's factual findings, based on the evidence presented to him, were that Epstein's contributions were not disproportionate and that but for those extra contributions appellee would probably need an increase in the support, which was precluded by the separation agreement. Consequently, the master recommended dismissal of appellant's petition, stating that appellee's relationship with Mr. Epstein was not "flagrant misconduct" that would require termination or a reduction of the spousal support, nor did the relationship effect a substantial change in appellee's financial circumstances.

Appellant noted exceptions to the master's report and requested a hearing. The court granted a hearing and on 6 July 1987 orally overruled appellant's exceptions and affirmed the master's report. On 5 August 1987, appellant noted an appeal from that oral order. On 7 October 1987, the circuit court issued a written order overruling appel-

lant's exceptions, thereby affirming the master's report. Appellant then noted an appeal from that order.[1]

### The "Flagrant Misconduct"/"Change in Financial Condition" Argument

The parties refer us to a trilogy of cases from this Court concerning the kind of conduct that will permit a trial court to terminate or reduce alimony or spousal support. Appellant relies on *Atkinson v. Atkinson*, 13 Md.App. 65, 281 A.2d 407 (1971), and *Roberts v. Roberts*, 35 Md.App. 497, 371 A.2d 689 (1977), for his argument that appellee's cohabitation with Epstein constitutes "flagrant misconduct" which permits a trial court to reduce or terminate contractual spousal support. Appellee relies on *Meyer v. Meyer*, 41 Md.App. 13, 394 A.2d 1220 (1978), *cert. denied*, 284 Md. 746 (1979), for her argument that her post-divorce cohabitation does not in itself justify reduction or termination of the support, but that such cohabitation may only be considered where it is relevant to a change in her financial condition. Appellee asserts that since, as the master found, no change in her financial condition has taken place, her relationship with Mr. Epstein is irrelevant.

---

1. In his brief, appellant asserts that this appeal is really two appeals proceeding simultaneously on the same record. That is an incorrect characterization. This appeal is from the 7 October 1987, written order as the 6 July 1987 ruling did not constitute a final judgment. While it is true that a court's oral order and a docket entry may constitute a final appealable judgment if no further action is contemplated by the trial court, *Doehring v. Wagner*, 311 Md. 272, 533 A.2d 1300 (1987), this is not the situation as regards the 6 July 1987 ruling. The docket entry for the July 6 hearing notes that the circuit court overruled appellant's exceptions and that the status of the case was "open." This open status indicates that further action by the court was contemplated and thus negates any inference that the court's oral ruling and docket entry constituted a final judgment. Therefore, the filing of the appeal from the 6 July 1987, ruling was premature; and since the filing of a premature appeal does not divest the trial court of jurisdiction, *Makovi v. Sherwin–Williams Co.*, 311 Md. 278, 533 A.2d 1303 (1987), the trial court retained authority and its written order of 7 October 1987, constituted the final appealable judgment.

In *Atkinson* we noted that there was a conflict of authority as to what, if any, post-divorce conduct would justify termination of spousal support, recognizing that in some states "flagrant misconduct" had been held to justify termination, whereas other states had rejected that concept. 13 Md.App. at 71–72, 281 A.2d 407. We found it unnecessary to align Maryland with either faction, since the activities of the recipient of the support, which did not include "living with" another man outside of marriage, did not constitute "flagrant misconduct" in any event. 13 Md.App. at 73, 281 A.2d 407. In *Roberts* we adopted the suggestion in *Atkinson* that "flagrant misconduct" could be grounds for terminating post-divorce support, but again found that the alleged misconduct—alcoholism—did not amount to "flagrant misconduct." 35 Md.App. at 503–07, 371 A.2d 689.

Appellant would have us (1) firmly hold that which we merely suggested in *Atkinson* and *Roberts*, that "flagrant misconduct" is a cause for terminating post-divorce support, and (2) determine that, by openly living with Mr. Epstein without benefit of marriage, appellee is guilty of such "flagrant misconduct" as would require the application of that rule. Appellee, however, points to *Meyer*, in which we, after reviewing the authorities dealing with the question of whether post-divorce sexual conduct would be grounds for terminating alimony, held:

> [T]hat alimony, awarded to a wife in a decree of divorce *a vinculo matrimonii*, may not be terminated or reduced solely because of her unchaste conduct subsequent to the divorce. That post-divorce conduct may, however, be considered when it is relevant to a change in financial condition.

41 Md.App. at 21, 394 A.2d 1220.

It would appear, therefore, that appellee has the better of it. Despite the earlier *dicta* in *Atkinson* and *Roberts*, *Meyer* flatly held that misconduct alone will not justify termination of alimony, only a change in financial circumstances, which may or may not accompany such misconduct, will require termination or modification of alimony. And,

as appellee points out, the master found that there had been no substantial change in financial circumstances and the chancellor accepted that finding. Appellant, of course, asserts that that finding is unsupported by, and contrary to, the evidence.

We need not resolve this dispute. We do not reach it because there is a more fundamental basis for affirming the denial of appellant's petition to terminate or modify support. By providing that their agreement should be incorporated but not merged in the divorce decree, the parties deprived the court of any post-enrollment power to end or diminish the contractual support for any reason not specified in the agreement. We explain.

### *"Incorporated But Not Merged"*

Prior to *Johnston v. Johnston,* 297 Md. 48, 465 A.2d 436 (1983), and the companion case of *Hamilos v. Hamilos,* 297 Md. 99, 465 A.2d 445 (1983), it was quite common for counsel drafting separation and property settlement agreements to insert a provision to the effect that in the event of divorce the agreement should be incorporated but not merged into the decree. It was apparently believed that incorporation would make the agreement part of the decree while non-merger would preserve its contractual status. Thus, in the event of a breach, it was thought, the aggrieved party would have the choice of enforcing the decree or suing on the contract. Since such language is still being inserted in separation agreements, we suspect that *Johnston* has been ignored or misread.

In Maryland, the traditional definition of alimony was court ordered payments to a wife for her support to continue during the joint lives of both husband and wife and so long as the parties live separate and apart. *Bebermeyer v. Bebermeyer,* 241 Md. 72, 215 A.2d 463 (1965); *Blades v. Szatai,* 151 Md. 644, 135 A. 841 (1927); *Hood v. Hood,* 138 Md. 355, 113 A. 895 (1921); *Newbold v. Newbold,* 133 Md. 170, 104 A. 366 (1918); *McCaddin v. McCaddin,* 116 Md. 567, 82 P. 554 (1911); *Wallingsford v. Wallingsford,* 6 H. &

J. 485 (1823). This traditional definition was modified by the passage of the Maryland Equal Rights Amendment, Md. Const. Decl. of Rights art. 46, thereby eliminating the gender bias stated in the traditional definition. Consequently, alimony may now be awarded to either spouse. *See, Hofmann v. Hofmann,* 50 Md.App. 240, 437 A.2d 247 (1981). *See also,* Md.Fam.Law Code Ann. § 11–101(b) (1984, 1987 Cum.Supp.) ("The court may award alimony to either party"). By virtue of Md.Fam.Law Code Ann. § 11–106(a), alimony may be awarded for a limited period of time and need not continue indefinitely during the joint lives of the parties or until the remarriage of the recipient. *Cf.* Md.Fam.Law Code Ann. § 11–106(c) (authorizing a court to award alimony for an indefinite period upon making certain factual findings).

The courts of Maryland have always recognized a distinction between alimony (sometimes referred to as "technical alimony"), which the court is empowered to award, and contractual spousal support which the court could not grant but for the agreement of the parties. *See, Bellofatto v. Bellofatto,* 245 Md. 379, 226 A.2d 313 (1967); *Bebermeyer v. Bebermeyer,* 241 Md. 72, 215 A.2d 463 (1965); *Schroeder v. Schroeder,* 234 Md. 462, 200 A.2d 42 (1964); *Dickey v. Dickey,* 154 Md. 675, 141 A. 387 (1928). The parties may, of course, agree upon the amount, duration, and method of payment of spousal support, and the court may, but need not, accept, adopt, and incorporate the agreement and make it part of the judgment or decree of divorce. If the agreed upon spousal support meets the definition of alimony, that is, if the court would have had the power to make that award absent the agreement, the award is technical alimony when the agreement is made part of the decree. But if the support provisions of the decree do *not* meet the technical definition of alimony, *i.e.,* if its terms are such that the court could not have awarded it but for the agreement, the provision remains contractual support even if it is made part of the decree. *See, Beber-*

*meyer v. Bebermeyer,* 241 Md. at 77, 215 A.2d 463; *Dickey v. Dickey,* 154 Md. at 678–79, 141 A. 387.

This distinction between technical alimony and contractual spousal support was far more important formerly than it is today. Prior to 1950, an agreement to pay spousal support that was made part of the divorce decree but did not qualify as technical alimony could be enforced by sequestration, execution, and attachment, *see, Reichhart v. Brent,* 247 Md. 66, 230 A.2d 326 (1967), but not by imprisonment for contempt. Such support was a debt imposed by contract rather than a duty imposed by judicial decree. *See, Dickey v. Dickey,* 154 Md. at 681, 141 A. 387. Furthermore, such contractual support, being purely contractual and not technical alimony, could not be modified by the court. *Soldano v. Soldano,* 258 Md. 145, 146, 265 A.2d 263 (1970) (per curiam); *Bellofatto v. Bellofatto,* 245 Md. at 385–86, 226 A.2d 313; *Bebermeyer v. Bebermeyer,* 241 Md. at 77–78, 215 A.2d 463; *Dickey v. Dickey,* 154 Md. at 678, 141 A. 387.

The first of these distinctions between technical alimony and contractual spousal support was blurred in 1950 by the adoption of an amendment to the Maryland Constitution, Md. Const. art. III, § 38, which now provides:

> No person shall be imprisoned for debt, but a valid decree of a court of competent jurisdiction or agreement approved by decree of said court for the support of a spouse or dependent children, or for the support of an illegitimate child or children, or for alimony (either common law or as defined by statute), shall not constitute a debt within the meaning of this section.

The second distinction was largely obliterated by Md. Fam.Law Code Ann. § 8–103(b), by virtue of which even contractual spousal support that is not technical alimony is subject to modification by the court, unless the agreement between the parties expressly provides otherwise.

■ Despite the amended language of article III, § 38 and that of § 8–103(b) of the Family Law Code, unless the

separation agreement is made part of the divorce decree, it cannot be enforced by imprisonment for contempt. There being no order to pay the support, failure to pay would merely be a breach of contract and not contemptuous disobedience of a court order. Likewise, if the agreement for spousal support is not made part of the decree or judgment of divorce, once the decree is enrolled the court no longer has any continuing jurisdiction over it that would enable the court to modify the agreement. *See,* Md.Rule 2–535. *See also, Platt v. Platt,* 302 Md. 9, 485 A.2d 250 (1984).

With those general principles in mind, we now turn to what the Court of Appeals said in *Johnston v. Johnston,* 297 Md. 48, 465 A.2d 436 (1983), about the effect of incorporating an agreement for spousal support into a divorce decree without merging it into the decree.

*Johnston* dealt with the question of whether a separation agreement that was incorporated but not merged in a divorce decree may be collaterally attacked. In holding that such a separation agreement was not subject to collateral attack, the Court discussed at length the significance of "incorporation" and "merger." The terms standing alone, according to the *Johnston* Court, have very different meanings. "Incorporation" will be construed so as to mean that the court will identify the separation agreement and approve it as valid. "Merger," on the other hand, means the substitution of rights and duties under the divorce decree for those under the separation agreement. Where a separation agreement recites that it is to be incorporated into the decree and no mention is made of merger, a merger will take place and the rights and duties of the separation agreement will merge and become part of the court's decree. When this occurs, the separation agreement, now the court's decree, is enforceable through contempt proceedings and may be modified by the court.[2] If, however, a separa-

---

2. Spousal support may be fixed by a separation agreement that expressly provides the support is non-modifiable. Md.Fam.Law Code Ann. § 8–103(b). If such an agreement is merged into a divorce

tion agreement is incorporated but not merged, then the separation agreement is not superseded by the decree. In that instance, the agreement survives as a separate and independent contractual arrangement between the parties, 297 Md. at 56, 465 A.2d 436, but not being part of the decree, its terms cannot be enforced by way of contempt proceedings. Whether the court can modify it is a matter left to the agreement itself. Md.Fam.Law Code Ann. § 8–103.

 In the case *sub judice*, we are confronted with a separation agreement that, by its terms, was incorporated but not merged into the divorce decree. What that means, according to *Johnston*, is that the court identified that agreement, approved its terms, and determined it to be valid. By thus conclusively establishing the validity of the agreement, the divorce decree precludes any collateral attack against it by either party. 297 Md. at 66, 465 A.2d 436. Not having been made part of the decree itself, however, the agreement remained a separate and independent contractual arrangement between the parties and, as a consequence, it could not be enforced by contempt proceedings.

We are not here concerned with enforceability of the agreement, but with whether it may be modified by the court. That is the question to which we now turn.

 We note first that the agreement stated that appellant was to make payments to appellee, "as alimony," on a monthly basis. These payments were to cease upon the death of either party or upon the remarriage of the appellee. By agreeing to these payments, the appellee waived any cause of action she might have had to seek additional "alimony" or change the "alimony" provisions provided for in the agreement, provided appellant did not breach his agreement to make such payments. The only modification permitted by the agreement relative to the

decree, the court may enforce it by contempt proceedings but may not modify it.

"alimony" payments would be by the appellant, if he became disabled or retired at age 60 or thereafter. Upon one of those two occurrences, the parties are obliged to try to agree on a modification of the support payments. If the parties are unable to agree, then, and only then, may one of them ask a court to modify the support payments. These modification provisions essentially render the separation agreement *sub judice* non-modifiable by a court at this time, there being no claim of disability or retirement. Appellee may not seek to modify the terms of the agreement under any conditions, having waived any right to obtain an increase in alimony for any reason. Appellant, in turn, has waived all right to seek a reduction unless he becomes disabled or retires, at age 60 or thereafter. And even upon the occurrence of one of those eventualities, no court modification can be obtained until after the parties fail to reach an agreement concerning modification. In sum, although the agreement does provide that it can be modified upon the happening of certain contingencies, appellant cannot rely on the agreement itself as authorizing a modification because none of those contingencies has occurred. Nor can he rely upon an argument that the court has the authority, under § 8–103(b) of the Family Law Code, to modify the provisions of the agreement because the agreement does not contain a specific statement that its provisions with respect to support "are not subject to any court modification." Because the agreement was not merged into the decree, the circuit court that issued that decree lost its continuing jurisdiction over it and thus any power to modify it when the decree became enrolled.

▮▮▮▮ Finally, the power of the court to terminate alimony pursuant to Md.Fam.Law Code Ann. § 11–108 [3] is not present in this case because what is called alimony in

---

**3.** Unless the parties agree otherwise, alimony terminates:
 (1) on the death of either party;
 (2) on the marriage of the recipient; or
 (3) if the court finds that termination is necessary to avoid a harsh and inequitable result.

the separation agreement is not alimony. Just because a separation agreement calls payments to an ex-spouse "alimony" does not make them so. *See, Schroeder v. Schroeder*, 234 Md. 462, 200 A.2d 42 (1964); *Newbold v. Newbold*, 133 Md. at 175, 104 A. 366. The payments as provided for in the separation agreement are simply contractual spousal support payments and not alimony because (1) the contractual support terms do not come within the definition of alimony; and (2) the court did not order the payment of support. The circuit court, therefore, had no power to modify or terminate the support payments based upon any traditional concept of continuing equitable jurisdiction or upon any provision of the Family Law Code. And, as discussed *supra*, appellant has no contractual right to such a modification. Although separation agreements are expressly sanctioned by statute, Md.Fam.Law Code Ann. § 8–101, such an agreement between spouses is, after all, nothing more than a contract. It is subject to the same general rules that govern all contracts, and particular questions related to the agreement must be resolved by reference to the particular language of the separation agreement. *See, Eigenbrode v. Eigenbrode*, 36 Md.App. 557, 373 A.2d 1306 (1977); *Pumphrey v. Pumphrey*, 11 Md.App. 287, 273 A.2d 637 (1971). As in any contract, the words of a separation agreement are to be given their ordinary meaning. *Payne v. Payne*, 73 Md.App. 473, 534 A.2d 1360 (1988). And the plain, unambiguous, and clear language of this agreement precludes modification of support payments at this time.

As for the termination of the contractual spousal support, the separation agreement states that the support shall terminate upon the death of either party or upon the remarriage of appellee. This language, too, is plain and unambiguous. Since neither death nor appellee's remarriage has occurred, the termination provisions have not been activated. Appellant argues that appellee has lived with Mr. Epstein for six years in a relationship that has all the attributes of marriage. The problem with that asser-

tion is that a relationship with "all the attributes of marriage" does not amount to marriage. Marriage, within the meaning of the plain language of the separation agreement, means undergoing a ceremony and obtaining a marriage license. *See,* Md.Fam.Law Code Ann. § 2–401. Appellee and Mr. Epstein have not complied with these legal requirements for marriage. Furthermore, it is firmly settled that Maryland does not permit common law marriages to be formed within its borders. *Henderson v. Henderson,* 199 Md. 449, 87 A.2d 403 (1952); *Townsend v. Morgan,* 192 Md. 168, 63 A.2d 743 (1949); *Mitchell v. Frederick,* 166 Md. 42, 170 A. 733 (1934); *Goldin v. Goldin,* 48 Md.App. 154, 426 A.2d 410, *cert. denied,* 290 Md. 714 (1981); *Jennings v. Jennings,* 20 Md.App. 369, 315 A.2d 816, *cert. denied,* 271 Md. 738 (1974). Since appellee has not remarried, the court did not err in refusing to terminate the contractual spousal support.

In summary, an agreement for spousal support that is not merged into the divorce decree remains entirely contractual and passes beyond the court's power to modify it for any reason—other than one provided for in the contract—once the decree is enrolled. And the agreement between the parties to this case cannot be modified or terminated because the contingencies that would authorize modification or termination have not occurred. Appellant complains that if this is the result the agreement is unconscionable as it permits appellee to receive spousal support and enjoy all the benefits of her relationship with Mr. Epstein. We do not think this situation is unconscionable. The master specifically found that Mr. Epstein's monetary contributions to appellee were not inordinate and that but for Mr. Epstein's contributions appellee would have had to ask for increased support, which she was prohibited from doing by the express terms of the separation agreement, in order to maintain the standard of living she formerly enjoyed. Mr. Epstein's monetary contributions are merely filling the void that an increase in the contractual support would have filled. While we can understand appellant's

plight, the facts remain that he negotiated and freely entered into the terms of the separation agreement; the validity of that agreement has been judicially affirmed, *Johnston v. Johnston, supra;* and appellant will not be heard to challenge the agreement or any of its provisions at this late date.[4]

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.

---

4. We note that a different result might have been reached if the agreement had contained a provision to the effect that the spousal support would terminate if the appellee entered into a "marriage-type arrangement," which may be characterized by

a common residence which each party regards as his or her own home, a common household to which each contributes, and a personal relationship that is more than casual and has significant meaning to each. These things are measured, of course, by living arrangements, by shared assets and expenses, and by how the parties and the community view their relationship.

*Fisher v. Fisher,* 75 Md.App. 193, 540 A.2d 1165 (1988). Appellee's relationship with Mr. Epstein arguably could qualify as such a "marriage-type arrangement."