596 A.2d 89

**Robert L. LANGLEY, Sr.**

v.

**Phylis D. LANGLEY.**

**No. 335, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

Oct. 1, 1991.

———

**536**

Arthur I. Messinger, Annapolis, for appellant.

Stephen S. Winegrad, Owings Mills, for appellee.

Argued before FISCHER, CATHELL and MOTZ, JJ.

FISCHER, Judge.

This case concerns the effect of § 8–103(c) of the Family Law Article upon a separation agreement entered into by Robert L. Langley, Sr., the appellant, and his former wife, Phylis D. Langley, the appellee. Mr. Langley filed a complaint in the Circuit Court for Anne Arundel County seeking to modify his support obligation to Ms. Langley. Ms. Langley moved to dismiss the complaint, and the court denied her motion. Upon reconsideration, however, the judge granted Ms. Langley's motion and dismissed the suit. From this dismissal, Mr. Langley appeals. At issue is the court's authority to modify the support provision set forth in the Langleys' separation agreement.

Pursuant to Md. Rule 8–207, the parties have elected to proceed by way of an expedited appeal. Accordingly, they have submitted an agreed statement of the case [1] from which we distill the following facts. In 1983, the parties entered into a property settlement, separation and custody agreement that was incorporated, but not merged, into their

---

1. We note, though, that the statement is unexecuted in contravention of Md. Rules 8–207(b) and 8–413(b).

ensuing divorce decree. Paragraph 9 of the agreement states in part:

> In the event the Husband becomes unemployed and his income becomes substantially less than during the time of his employment, the parties agree to renegotiate the support provisions of this Agreement in good faith or to subject those provisions to a court of competent jurisdiction for determination.

Several years later, Mr. Langley filed a complaint to modify his support obligation. He alleged:

> (a) a substantial change in circumstances due to his remarriage and birth of two additional children, (b) a decrease in [his] income and an increase in living expenses, (c) a greater ability of [Ms. Langley] to contribute to her own living expenses, and (d) an inequitable result if [he] continues to pay alimony as he is spending more support on [Ms. Langley] than on his new children.

The court dismissed the complaint, concluding that the parties intended to limit the modification of support to the sole circumstance provided in the separation agreement. Mr. Langley now contends that paragraph 9 of the separation agreement is "subject to more than one meaning or interpretation thereby permitting the court to modify the terms of alimony under circumstances other than when 'Husband becomes unemployed and his income becomes substantially less than during the time of his employment.'" Ms. Langley responds that "the agreement is unambiguous wherein alimony may be modified by the Court only under the above-stated circumstance."

Two provisions of the Md.Fam.Law Code Ann. are applicable to this dispute. Section 8–103(c) states:

> The court may modify any provision of a deed, agreement, or settlement with respect to alimony or spousal support executed on or after April 13, 1976, regardless of how the provision is stated, unless there is:
>
> (1) an express waiver of alimony or spousal support; or

(2) a provision that specifically states that the provisions with respect to alimony or spousal support are not subject to any court modification.

In addition, § 8–105(b) provides:

The court may modify any provision of a deed, agreement, or settlement that is:

(1) incorporated, whether or not merged, into a divorce decree; and

(2) subject to modification under § 8–103 of this subtitle.

Sidestepping these statutory provisions, Ms. Langley directs our attention to *Mendelson v. Mendelson,* 75 Md.App. 486, 541 A.2d 1331 (1988), a case which she asserts is dispositive of the controversy now before us. The Mendelsons entered a separation agreement wherein Mr. Mendelson agreed to pay spousal support to Ms. Mendelson. Support was to cease upon the death of either party or upon the remarriage of Ms. Mendelson. The agreement further provided that Ms. Mendelson waived "any cause of action she may have to seek additional alimony or change the alimony provisions ... provided that [Mr. Mendelson] does not breach the agreement." *Mendelson,* 75 Md.App. at 491, 541 A.2d 1331. In addition, the agreement stated that should Mr. Mendelson become disabled or retired at age 60 or greater, "[T]he parties shall attempt to agree on alimony ... payments that are equitable in light of [Mr. Mendelson's] changed financial resources." If the parties were unable to agree, "either party may apply to a court of competent jurisdiction for such relief as may be appropriate." *Mendelson,* 75 Md.App. at 491–492, 541 A.2d 1331.

Upon subsequently learning that Ms. Mendelson had formed a close relationship and was cohabitating with another gentleman, Mr. Mendelson filed a petition to reduce or terminate the support payments. A domestic relations master heard the matter and recommended dismissal of Mr. Mendelson's petition. The master determined that "Ms. Mendelson's [new] relationship ... was not 'flagrant mis-

conduct' that would require termination or a reduction of spousal support, nor did the relationship effect a substantial change in [Ms. Mendelson's] financial circumstances." *Mendelson*, 75 Md.App. at 492, 541 A.2d 1331. Mr. Mendelson noted exceptions to these findings but to no avail.

Mr. Mendelson then sought relief in this Court. Denying his request, we opined:

[The support payments] were to cease upon the death of either party or upon the remarriage of [Ms. Mendelson]. By agreeing to these payments [Ms. Mendelson] waived any cause of action she might have had to seek additional 'alimony' or change the 'alimony' provisions provided for in the agreement, provided [Mr. Mendelson] did not breach his agreement to make such payments. The only modification permitted by the agreement relative to the 'alimony' payments would be by [Mr. Mendelson], if he became disabled or retired at age 60 or thereafter. Upon one of those two occurrences, the parties are obliged to try to agree on a modification of the support payments. If the parties are unable to agree, then, and only then, may one of them ask a court to modify the support payments. These modification provisions essentially render the separation agreement *sub judice* non-modifiable by a court at this time, there being no claim of disability or retirement. [Ms. Mendelson] may not seek to modify the terms of the agreement under any conditions, having waived any right to obtain an increase in alimony for any reason. [Mr. Mendelson], in turn, has waived all right to seek a reduction unless he becomes disabled or retires, at age 60 or thereafter. And even upon the occurrence of one of those eventualities, no court modification can be obtained until after the parties fail to reach an agreement concerning modification. In sum, although the agreement does provide that it can be modified upon the happening of certain contingencies, [Mr. Mendelson] cannot rely on the agreement itself as authorizing a modification because none of those contingencies has occurred. Nor can he rely upon an argument

that the court has the authority, under § 8–103(b) of the Family Law Code, to modify the provisions of the agreement because the agreement does not contain a specific statement that its provisions with respect to support 'are not subject to any court modification.' Because the agreement was not merged into the decree, the circuit court that issued that decree lost its continuing jurisdiction over it and thus any power to modify it when the decree became enrolled.

*Mendelson*, 75 Md.App. at 499–500, 541 A.2d 1331.

We decided *Mendelson* prior to the codification of § 8–105(b). As the Mendelsons' agreement was not merged into their divorce decree, we were unable to determine the effect of § 8–103(c). The enactment of § 8–105 has, however, cleared the path for such discussion.

Our analysis need not be lengthy, though, as the solution to our question lies within the language of § 8–103(c). To reiterate, § 8–103(c)(2) authorizes the court to modify alimony or spousal support agreements unless the agreements contain "a provision that *specifically states* that the provisions with respect to alimony or spousal support are *not subject* to *any* court modification." (Emphasis added.) When interpreting this, or any other statute, we first look to its text. A basic tenant of statutory construction requires that, "Statutes are construed according to their plain meaning and words used in legislation are to be considered in their plain and ordinary meaning when those words are not ambiguous." *County Council for Montgomery County v. Supervisor of Assessments of Montgomery County*, 274 Md. 116, 120, 332 A.2d 897 (1975).

Section 8–103(c) is unambiguous. By its own terms, § 8–103(c) authorizes the court to modify spousal support agreements. Exempt are only those agreements containing a waiver of support, § 8–103(c)(1) or a *specific* statement that support is not subject to *any* court modification, § 8–103(c)(2).

The Langleys' agreement lacks either of these statements. While their agreement provides that the parties may petition the court to modify the support obligation if Mr. Langley should become unemployed, the agreement is devoid of a specific statement, as required by statute, in order to preclude the court from modifying the support obligation under other circumstances. Without the requisite definitive statement, their agreement is subject to modification by the court.

We reach this conclusion despite Ms. Langley's urging that modification may be sought only for the reasons specified in paragraph 9 of the agreement. Ms. Langley argues that by listing certain instances when modification may be requested, the parties have precluded modification based on any other grounds. Simply stated, Ms. Langley contends that modification is limited to the circumstances enumerated in paragraph 9 of the agreement. Were we to construe the effect of paragraph 9 as Ms. Langley suggests, we would, nonetheless, ultimately rule against her. Such is the case in light of § 8–103(c)(2). This provision unequivocally requires a *specific* statement that the agreement is not subject to *any* court modification. Section 8–103(c)(2) is controlling in this situation, and we are bound to follow its mandate. Without the requisite § 8–103(c)(2) statement, the Langleys' spousal support provision is subject to modification despite paragraph 9 of their agreement.

Of course, this is not to say that modification will be granted. The court must first determine whether the requested modification is appropriate. As the court below did not reach this issue, we must remand the matter for further findings.

JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY THE APPELLEE.