697 A.2d 1342

Debra L. SHAPIRO

v.

David L. SHAPIRO.

No. 123, Sept. Term, 1995.

Court of Appeals of Maryland.

July 29, 1997.

Reconsideration Denied Sept. 9, 1997.

Thomas C. Ries, Bruce A. Kaufman (Rosenthal, Kaufman & Ries, P.A., on brief), Baltimore, for Petitioner.

Leslie L. Gladstone, Baltimore, for Respondent.

Argued before MURPHY, C.J.*, and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

RODOWSKY, Judge.

Maryland Code (1984, 1991 Repl.Vol.), § 8–103(c) of the Family Law Article (FL) reads:

"The court may modify any provision of a deed, agreement, or settlement with respect to alimony or spousal support executed on or after April 13, 1976, regardless of how the provision is stated, unless there is:

(1) an express waiver of alimony or spousal support; or

(2) a provision that specifically states that the provisions with respect to alimony or spousal support are not subject to any court modification."

The principal issue presented here is whether parties who agree that the amount of spousal support may be court-modified only under certain circumstances, but that support

---

* Murphy, C.J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and the adoption of this opinion.

otherwise is not to be modified, have utilized with legal effect the subsection (c)(2) exception to the general rule of modifiability.

The issue arises out of the marital settlement agreement (the Agreement) entered into on May 4, 1988, by Debra L. Shapiro (Ms. Shapiro) and David L. Shapiro (Mr. Shapiro). Mr. Shapiro is a clinical psychologist. Ms. Shapiro is a computer programmer and teacher of computer science. Four children were born of the marriage: Sara (9/4/73), Laura (11/11/75), Ann (6/7/79), and Jonathan (1/7/82). Mr. Shapiro remarried in December 1988. Ms. Shapiro has not remarried.

The Agreement was incorporated into, but not merged with, the divorce judgment granted the parties on August 29, 1988, by the Circuit Court for Howard County. Under the Agreement and the decree, the parties have joint custody of their children, whose primary residence is with their mother.

The Agreement recites the parties' intent "to settle all questions of maintenance and support, alimony, counsel fees, their respective rights in ... property ... and all other matters of every kind and character arising from their marital relationship." Payments by Mr. Shapiro "as alimony" are as required by parts 5(a) and (b) of the Agreement. Part 5(a) payments of $2,500 per month terminate on the first to occur of the death of either spouse or the arrival of January 1, 2009. There is no provision for the part 5(a) "alimony" to end on Ms. Shapiro's remarriage. Part 5(b) payments of $1,250 per month commence January 1, 2009, and terminate on the first to occur of the death of either spouse or Ms. Shapiro's remarriage. For income tax purposes payments made pursuant to both parts are to be deducted by Mr. Shapiro and included in income by Ms. Shapiro.

The January 1, 2009 termination date for part 5(a) "alimony" bears no significant relation to the age of any of the children or to the termination of child support. Under the Agreement support for a child ends on the child's twenty-fifth birthday. The youngest child reaches age twenty-seven seven days after the part 5(a) payments end.

Possible modification of the alimony is addressed in part 5(e), reading:

> "*Said alimony payments shall not be modified by the Court except in the event that* Husband shall become temporarily or permanently disabled as defined in Husband's current disability insurance policy. In the event of such disability, Husband shall have the right to submit the issue of alimony to arbitration under the rules of the American Arbitration Association or some similarly recognized arbitration association. The provisions of this paragraph will not apply if Husband and Wife agree to support modifications as a result of any disability. The level of support preceding Husband's disability shall remain in effect until said arbitration has resulted in the binding recommendation of a new support figure."

(Emphasis added). Part 5(f) requires Mr. Shapiro to maintain a disability policy at least as comprehensive as his policy then in effect so long as he is required to make "alimony" payments. Mr. Shapiro is not and has not been disabled.

Mr. Shapiro also agreed to pay child support for his four children in installments of $250 per month for each child. Termination events are Mr. Shapiro's death, the death of an individual child, or the child's reaching age twenty-five. The Agreement contains a cost-of-living formula for annual adjustments of child support. Mr. Shapiro further agreed to be responsible "for such other Child-related expenses as medical, dental, and orthodonture expenses, the expenses of Bar and Bat Mitzvah, and camp," and "to pay the reasonable costs of college tuition, room, and board for each child."

Approximately sixteen months after the divorce was granted Mr. Shapiro petitioned the court to rescind the Agreement or to modify it. His effort to rescind the Agreement was unsuccessful, and those issues are not before us. Subsequently, the court (Kane, J.) held that the provisions of the Agreement for the payment of alimony were subject to court modification, despite the express provision that the alimony payments were not to be modified, except in the event of Mr.

Shapiro's disability—a condition that had not occurred. The court based its conclusion on *Langley v. Langley,* 88 Md.App. 535, 596 A.2d 89 (1991).

*Langley* involved a separation agreement that provided for a court determination of spousal support in the event the husband were to become unemployed. But for that provision, the agreement was silent on modifiability *vel non* of support. When the husband sought a modification of the amount of support, although he was still employed, the trial court dismissed the petition because the sole condition for modification had not occurred. *Id.* at 537, 596 A.2d at 90. The Court of Special Appeals reversed.

It noted that FL § 8–103(c)(2) required "a *specific* statement that support is not subject to *any* court modification," both of which were lacking in the Langleys' agreement. *Id.* at 540–41, 596 A.2d at 92. The court said:

"While their agreement provides that the parties may petition the court to modify the support obligation if Mr. Langley should become unemployed, the agreement is devoid of a specific statement, as required by statute, in order to preclude the court from modifying the support obligation *under other circumstances.* Without the requisite definitive statement, their agreement is subject to modification by the court."

*Id.* at 541, 596 A.2d at 92 (emphasis added).

Ms. Langley then argued that the separation agreement, by limiting modification to one circumstance, was properly to be construed to prohibit modification under any other circumstances. The Court of Special Appeals rejected this contention. It repeated that FL § 8–103(c)(2) "unequivocally requires a *specific* statement that the agreement is not subject to *any* court modification." *Id.* The court further held that "[w]ithout the requisite § 8–103(c)(2) statement, the Langleys' spousal support provision is subject to modification despite" the paragraph addressing the husband's possible unemployment. *Id.*

Insofar as it bears on the issues before us, *Langley* may be read in two different ways. One passage, quoted above, strongly suggests that the Langleys' agreement would have complied with § 8–103(c)(2) if the provision concerning all circumstances other than unemployment specifically stated that it was not subject to any modification. On the other hand, the twice repeated statement of the effect of § 8–103(c)(2) refers the specific statement of non-modifiability to the entire agreement.

In the instant matter the Shapiros' Agreement expressly precludes court modification, except in the event of Mr. Shapiro's disability, when modification by an arbitrator is permitted. The circuit court concluded that *Langley* was not thereby distinguished. Failure to use the "requisite" language to block all modification made the Agreement potentially modifiable at any time and under any circumstances.

At a later hearing, the court (Sweeney, J.) considered whether the spousal support provisions of the Agreement *should* be modified. There was evidence presented by Mr. Shapiro that the tax deductibility of alimony weighed heavily in setting forth in the Agreement the amount of spousal support as compared to child support. The court was persuaded by this evidence. Insofar as relevant to the issues now before us, the circuit court entered the following judgment:

"13. The alimony provisions of the parties' Agreement ... shall be considered child support for purposes of any further construction of the Agreement by this Court.

"14. ... [Mr. Shapiro's] alimony and child support obligations are hereby modified to the effect that [Mr. Shapiro] shall be allowed an offset against his monthly child support obligation for each child who is attending college and for whom [Mr. Shapiro] is paying college education expenses in accordance with the ... Agreement. [Mr. Shapiro] shall further be allowed an offset in the amount of that child's proportionate share of his monthly alimony payments for each child who is attending college and for whom [Mr.

Shapiro] is paying college education expenses in accordance with the . . . Agreement."

Ms. Shapiro appealed to the Court of Special Appeals which, in an unreported opinion, affirmed those aspects of the circuit court judgment discussed above. The intermediate appellate court held that the circuit court properly had applied *Langley* ("Paragraph 5(e) of the Shapiros' agreement does not contain a provision, as required by statute . . . to preclude the court from modifying the spousal support agreement obligation under *any* circumstances."). The intermediate appellate court also held that the circuit court had not erred in revising the divorce decree to recharacterize alimony as child support.

We granted Ms. Shapiro's petition for certiorari which raises two questions. The first is whether FL § 8–103(c)(2) requires the alimony or spousal support provisions of a separation agreement to be entirely modifiable or entirely nonmodifiable. We answer that question in the negative in Part I, *infra*. The second question presented is: "In the absence of fraud, mistake, or irregularity, may a court rewrite a marital settlement agreement which is part of an enrolled judgment?" We reject the revision of the separation agreement in Part II, *infra*.[1]

## I

In § 8–103(c)(2) the word, "provision," appears four times in singular or plural number. The first appearance is in the statement of the general rule that "the court may modify any provision of a[n] . . . agreement . . . with respect to

---

1. On other issues that are not before us on certiorari the Court of Special Appeals also affirmed, with one exception. The exception relates to Ms. Shapiro's appeal from the denial of an increase in child support. On that issue the intermediate appellate court vacated and remanded for calculation of child support in accordance with the child support guidelines, or for an explanation of any departure from the guidelines. Under the Court of Special Appeals opinion it was unclear whether the recharacterized alimony payments were to be added to the child support payments in the guideline calculations. Our reversal of the recharacterization moots the question.

alimony or spousal support. . . ." Use of the pronominal indefinite adjective, "any," is the recommended drafting technique in the Code Revision Project for "defining the class." Governor's Commission to Revise the Annotated Code of Maryland, *Revisor's Manual* at 51 (2d ed. Nov.1973). The second appearance is in the clause, "regardless of how the provision is stated." Under this clause the distinction previously made between technical alimony and contractual support becomes irrelevant for purposes of applying § 8–103(c). Under prior law technical alimony was modifiable and contractual support was not modifiable, despite what a separation agreement said. *See Horsey v. Horsey,* 329 Md. 392, 410–11, 620 A.2d 305, 315 (1993); *McAlear v. McAlear,* 298 Md. 320, 329–30, 469 A.2d 1256, 1260–61 (1984); *Emerson v. Emerson,* 120 Md. 584, 597–98, 87 A. 1033, 1038–39 (1913). The third appearance introduces an exception to the general rule, "unless there is . . . a provision that specifically states. . . ." The fourth appearance is the language, "that the provisions with respect to alimony or spousal support are not subject to any court modification."

The courts below read the fourth appearance, "provisions," to mean all of the provisions. That reading is influenced by the singular in the third appearance, suggesting that the exception to the general rule can only be achieved by one provision that specifically states that "the provisions," read as "all of the provisions," are not subject to any court modification. Of course, if that were the legislative intent, the draftsperson could more precisely have said, "unless there is . . . a provision that specifically states that no provision . . . is subject to any court modification." That is, in effect, the construction for which Mr. Shapiro contends. He submits that a bright-line test is intended that carries forward the all or nothing approach to modifiability previously encountered in the technical alimony-contractual support distinction.

Ms. Shapiro contends for a construction that would permit specifying, provision by provision within the class, whether a provision is modifiable or not. A hypothetical may be used to illustrate Ms. Shapiro's contention. The parties might agree

in provision one to an initial amount of spousal support and in that provision specifically state that the amount is not subject to court modification, unless otherwise provided. In provision two they might agree to a modification of the initial amount to a different, specific amount upon the payor's retirement, and in that provision specifically state that the revised amount is not subject to court modification. In provision three the parties might address loss of employment, prior to retirement, by the payor, and agree to court modification under that described circumstance. Provision four might address disability of the payor and provide for court modification under that described circumstance. Ms. Shapiro submits that the courts below erred in adopting a construction requiring that all four circumstances addressed in our hypothetical agreement must be unmodifiable for any to be unmodifiable, and in holding that, if any provision is modifiable, all provisions become modifiable, even if the agreement expressly says that some provisions are not modifiable.

Rules of interpretation are set forth in Md.Code (1957, 1996 Repl.Vol.), Article 1. Section 8 provides that "[t]he singular always includes the plural, and vice versa, except where such construction would be unreasonable." Under this statutory directive, the third and fourth appearances in § 8–103(c) of "provision(s)" can be read either uniformly in the singular or uniformly in the plural—"unless there are provisions that specifically state that the provisions" within the class are not subject to any court modification, or, "unless there is a provision that specifically states that a provision" within the class is not subject to any court modification. Either form, permissible under Art. 1, § 8, raises at least an ambiguity as to whether the parties may contract concerning court modifiability, *vel non*, provision by provision.[2]

---

**2.** It should be noted that this case does not present the question of whether the parties can allow for court modification of a provision but then contractually limit the extent of the exercise of a court's power, *e.g.*, by establishing contractual ceilings or floors on court ordered support. Here we deal only with circumstances—in this case, two circumstances, namely, disability of the payor when modification of the

A

When we turn to the legislative history of FL § 8–103(c) for assistance in resolving the ambiguity, we find that the language to be construed first appeared in the Code with the enactment of what is now FL § 8–103(b),[3] that the purpose of subsections (b) and (c) was to remove a technical, legal obstacle to effectuating the parties' intent as expressed in their contract, and that there is nothing indicating that the General Assembly intended to prevent parties, by contract, from excepting themselves under specified conditions, as opposed to universally, from modifiability.

FL § 8–103(b) was enacted by Chapter 849 of the Acts of 1975 to overturn the rule, exemplified by *Simpson v. Simpson*, 18 Md.App. 626, 308 A.2d 410 (1973), under which technical alimony was modifiable but contractual spousal support was not. *LaChance v. LaChance*, 28 Md.App. 571, 576 n. 7, 346 A.2d 676, 680 n. 7 (1975). The separation agreement in *Simpson* stated specifically that its "alimony" provisions would be subject to " 'continuing jurisdiction and further orders of the Circuit Court for Baltimore County.' " *Simpson*, 18 Md. App. at 630, 308 A.2d at 413. Because the agreement failed to terminate the payments on the death of the payor, the payments were not technical alimony, and the court was powerless to consider modification after the payor had retired from active employment. *Id.* at 631, 308 A.2d at 414.

Chapter 849 of the Acts of 1975 addressed the problem by amending Md.Code (1957, 1973 Repl.Vol.), Art. 16, § 28. The then existing statute recognized the validity of separation agreements and provided that child custody agreements were subject to court modification under the best interests of the

---

amount of spousal support is permitted, and all other circumstances, when the amount of support is agreed to be unmodifiable.

3. FL § 8–103(b) reads:

"The court may modify any provision of a deed, agreement, or settlement with respect to spousal support executed on or after January 1, 1976, regardless of how the provision is stated, unless there is a provision that specifically states that the provisions with respect to spousal support are not subject to any court modification."

child standard. Chapter 849 wove its provisions into that existing statutory framework in the fashion set forth below, where the italicized matter reflects new language added to the existing statute.

"[P]rovided, that whenever any such deed or agreement shall make provision for or in any manner affect the care, custody, education or maintenance of any infant child or children of the parties, *or shall make provision for or in any manner affect support, maintenance, property rights, or personal rights between the husband and wife,* the court shall have the right to modify such deed or agreement in respect to such infants as to the court may seem proper, looking always to the best interests of such infants, *or* in respect to support, *maintenance, property rights, or personal rights between the husband and wife regardless of the manner in which the provisions are expressed or stated unless the provisions of the deed, agreement, or settlement specifically state that they are not subject to any court modification.*"

(Emphasis added).

The 1975 enactment had a postponed effective date of January 1, 1976. Under cover of a letter of October 13, 1975, the Family Law Committee of the Bar Association of Baltimore City, Inc. transmitted to the House Judiciary Committee a proposed emergency bill that would amend the 1975 legislation. That proposal became House Bill 467 which was enacted as Chapter 170 of the Acts of 1976, effective April 13, 1976.[4] See Bill File on H.B. 467 of the 1976 Session of the General Assembly.

The covering letter from the bar association committee stated that the objective of the 1975 enactment, *i.e.,* "wiping out" the distinction between technical alimony and contractual support, "was certainly meritorious as in too many instances, the wording utilized by the draftsman to set forth the true

---

**4.** The only amendments to H.B. 467 as introduced conformed the language proposed by the bar association committee to the abolition of gender distinctions in the award of alimony effected by Chapter 332 of the Acts of 1975.

intent of the settling parties produced a result contrary to what was actually intended." The letter, however, pointed out at least two areas in which the 1975 legislation was said to have gone too far. The first was by including property rights and personal rights within the scope of a court's power to modify an agreement. The second was that the 1975 legislation could be read to permit the parties by contract to prevent a court from modifying child custody and child support awards.[5]

Chapter 170 of the Acts of 1976 addressed these concerns by separating the provisions relating to the modification of child custody and support from those relating to spousal support, by eliminating from the latter the reference to property and personal rights, and by recognizing contractually based waivers of spousal support. In relevant part the language enacted by Chapter 170 read as follows:

"Furthermore, any provision in the deed or agreement in respect to alimony, support and maintenance of the husband or wife is subject to modification by the court to the extent the court deems just and proper regardless of the manner in which the provisions with respect to the alimony, support and maintenance are expressed or stated unless there is an express waiver of alimony, support and maintenance by the husband or wife or unless the provisions of the deed, agreement, or settlement specifically state that the provisions with respect to the alimony, support and maintenance of the husband or wife are not subject to any court modification."

Thus, in terms of our dissection of the use of "provision(s)" in FL § 8–103(c), the 1976 legislation used the plural in both the third and fourth appearances of the term. By utilizing the

---

5. In the 1975 legislation, there was no fourth appearance of the word, "provision(s)." Instead, the word, "they," was used. In context its immediate reference was to "the provisions of the ... agreement," meaning all of the provisions, without limitation to the class of provisions relating to spousal support. Inasmuch as child support was also a type of provision that was embraced in the same statutory sentence, the statute could be read to permit a contractual prohibition against court modification of child custody or support.

plural in both the subject and the predicate of the exception, the draftsperson created a semantic ambiguity as to the number intended. R. Dickerson, *The Fundamentals of Legal Drafting* § 6.5, at 124 (2d ed.1986), advises as follows:

"So far as substantive meaning permits, it is desirable to use the singular rather than the plural. This will avoid the question whether the predicate applies separately to each member of the subject class or jointly to the subject class taken as a whole."

The rule of interpretation set forth in Art. 1, § 8 was in effect in 1976. Consequently, unless it would be unreasonable to do so, the 1976 enactment could be read to say, "unless a provision of the ... agreement ... specifically states a provision with respect to ... support ... is not subject to any court modification." Thus, the parties could specifically state exclusion from modifiability provision by provision.

Former Art. 16, § 28 remained unchanged from the emergency legislation of 1976 until the enactment, by Chapter 296 of the Acts of 1984, of the Family Law Article as part of the Code Revision Project. Because of the differences in the subject matter of the contract provisions dealt with in the 1975 and 1976 enactments, and because of the difference in effective dates, the two enactments were separately presented in FL § 8–103 as subsections (b) and (c). In restyling former § 28 to create present subsection (c), the revisor had to express two ways in which the parties could, by agreement, prevent court modification of spousal support provisions, namely, (1) an express waiver of alimony or spousal support and (2) "provisions" in the agreement specifically stating that "the provisions with respect to ... support ... are not subject to any court modification." The revisor introduced both exceptions by saying, "unless there is:". That introduction accommodated the singular, "an express waiver," in then existing Art. 16, § 28, but the singular of the verb, "is," conflicted with the plural used in then existing Art. 16, § 28 for the second exception, "provisions." Thus, "provisions" in the prior statute became "a provision" dealing with "the provisions," the latter of which the courts below read to mean "all provisions."

A legislative intent supporting the interpretation of the courts below cannot be derived from the change between the 1976 language and the Code Revision language. The Revisor's Note to § 8–103 does not specifically address the change. See Md.Code (1984), Revisor's Note following FL § 8–103. That Note, however, does advise that "[t]his section is new language derived without substantive change from the second and third sentences of former Art. 16, § 28." *Id.*

FL § 8–103(c) is incorporated into FL § 8–105(b), enacted by Chapter 443 of the Acts of 1990.[6] The purpose of § 8–105(b) was to change the rule enunciated in *Mendelson v. Mendelson,* 75 Md.App. 486, 541 A.2d 1331 (1988). *See* J.F. Fader, II & R.J. Gilbert, *Maryland Family Law* § 13–8(b)(1)(iv) (2d ed.1995); Floor Report by the Senate Judicial Proceedings Committee on S.B. 252 of the 1990 Session of the General Assembly.[7] We find nothing in the legislative history of FL § 8–105 that is particularly enlightening on the issue before us. To the extent that the parties could agree under FL § 8–103(c) that there would be no modification, the parties could so agree after the 1990 enactment.

### B

█ Thus, it appears that FL § 8–103(c)(2), and the predecessor statute that was restyled into FL § 8–103(c)(2), do not

---

6. Section 8–105(b) reads:
   "The court may modify any provision of a deed, agreement, or settlement that is:
   (1) incorporated, whether or not merged, into a divorce decree; and
   (2) subject to modification under § 8–103 of this subtitle."

7. *Mendelson* had held that spousal support provisions in an agreement that was not merged into a divorce decree remained entirely contractual and were beyond the court's power of modification"—other than one provided for in the contract." *Id.* at 502, 541 A.2d at 1339. The concern that this rationale prevented enforcement by contempt was addressed by Chapter 589 of the Acts of 1989, now codified as FL § 8–105(a). The 1989 legislation, however, did not address *Mendelson*'s effect on the power to modify.

unambiguously support the construction applied by the courts below and that the language can also accommodate Ms. Shapiro's contention. On the other hand, we have uncovered nothing in the legislative history that indicates that the General Assembly ever focused on the issue with which we are here concerned. Thus, in order to construe the statute on the issue here, we examine the General Assembly's purpose in enacting it. *See Kaczorowski v. Mayor & City Council of Baltimore,* 309 Md. 505, 525 A.2d 628 (1987).

As we have seen in Part I.A, *supra,* the statute's immediate purpose was to permit court modification of contractual support, unless the parties otherwise agreed, by eliminating, in the modification context, the distinction between technical alimony and contractual support. The ultimate purpose was to prevent the unintended results under separation agreements that were produced by the technical alimony-contractual support dichotomy.

If the statutory exception to the general rule of modifiability is read to require a blanket provision, making non-modifiable each and every provision in a package of provisions relating to spousal support, then the evil that the General Assembly sought to cure by § 8–103(c)(2) is recreated. The only difference is the nature of the contractual intent that is frustrated. Under the technical alimony-contractual spousal support distinction, intended modifiability was frustrated. Under the construction applied by the courts below, intended non-modifiability of one or more provisions out of the whole number of contractual spousal support provisions in an agreement can be frustrated. We can discern no legislative purpose to substitute one form of frustration of contractual intent for another in a statute intended to fulfill expectations based on the parties' agreement. Nor do we discern in this statute, that was intended to abolish the technical alimony-contractual support distinction, an intent to perpetuate the all or nothing approach to modifiability that characterized that prior law.

The foregoing conclusion is reinforced by the public policy of the past sixty-five years, that is now expressed in FL § 8–

101(a). It provides that "[a] husband and wife may make a valid and enforceable deed or agreement that relates to alimony, support, property rights, or personal rights." FL § 8–101(a) was first enacted by Chapter 220 of the Acts of 1931. In its original form the statute read, in part, that separation agreements "shall be valid, binding and enforceable to every intent and purpose. . . ." *Id.* The broad, validating approach of FL § 8–101(a) is inconsistent with restrictively reading FL § 8–103(c)(2) to require that the contractual spousal support provisions in a sophisticated separation agreement must either be modifiable as a class or non-modifiable as a class. It is similarly inconsistent with § 8–101(a)'s invitation to contract to declare modifiable that which is specifically nonmodifiable based on the lack of uniformity as to modifiability among all provisions relating to spousal support.

In addition to relying on *Langley,* Mr. Shapiro argues that the General Assembly intended an all or nothing approach in FL § 8–103(c)(2) in order to permit a court to apply the factors for setting the level of spousal support that are required to be considered under FL § 11–106(b).[8] First, FL

---

8. Section 11–106(b) reads:

"In making the determination, the court shall consider all the factors necessary for a fair and equitable award, including:

(1) the ability of the party seeking alimony to be wholly or partly self-supporting;

(2) the time necessary for the party seeking alimony to gain sufficient education or training to enable that party to find suitable employment;

(3) the standard of living that the parties established during their marriage;

(4) the duration of the marriage;

(5) the contributions, monetary and nonmonetary, of each party to the well-being of the family;

(6) the circumstances that contributed to the estrangement of the parties;

(7) the age of each party;

(8) the physical and mental condition of each party;

(9) the ability of the party from whom alimony is sought to meet that party's needs while meeting the needs of the party seeking alimony;

(10) any agreement between the parties; and

§ 11–106(b) was enacted by Chapter 575 of the Acts of 1980, some four years after enactment of the statute that is now FL § 8–103(c)(2). Second, § 11–106 addresses the initial determination of "the amount of and the period for an award of alimony," FL § 11–106(a), not a modification. Third, where the parties have agreed on non-modifiable support payments under some circumstances and have agreed that they will look to the court for modification under some other circumstance, if and when that other circumstance occurs and the parties come to the court for modification, the court at that time would not be restricted from considering as many of the types of factors enumerated in FL § 11–106(b) as are relevant to the circumstances at that time.

Inasmuch as Mr. Shapiro is not and has not been disabled, the sole circumstance under which modification of spousal support is permitted by the Agreement has not occurred. For all the foregoing reasons we hold that the presently operative spousal support provision is not modifiable, as the parties agreed. To the extent that *Langley* is inconsistent with our holding in this case, it is overruled.[9]

## II

■ In its decree the circuit court also ordered that the "alimony provisions" of the Agreement "shall be considered child support. . . ." The Court of Special Appeals affirmed that aspect of the circuit court's order, concluding that the

---

(11) the financial needs and financial resources of each party, including:

(i) all income and assets, including property that does not produce income;

(ii) any award made under §§ 8–205 and 8–208 of this article;

(iii) the nature and amount of the financial obligations of each party; and

(iv) the right of each party to receive retirement benefits."

9. Our construction of FL § 8–103(c)(2) makes it unnecessary for us to consider Ms. Shapiro's secondary argument, *i.e.*, that the provision for modification by an arbitrator is not a provision for "court" modification, even if the decree is later changed by the court to reflect the arbitrator's award.

circuit court had the power so to alter the Agreement by a combination of FL §§ 8–105(b), 8–103(c)(2), and its decision in *Lieberman v. Lieberman,* 81 Md.App. 575, 568 A.2d 1157 (1990). The argument fails because the Agreement had been incorporated into the judgment for divorce of August 29, 1988. When Mr. Shapiro filed his petition for modification in December 1989, approval of the alimony provisions, "as alimony," had been effected by incorporation of the Agreement into the decree. Unless a statute otherwise provided, that aspect of the decree was subject to modification only for fraud, mistake, or irregularity. Maryland Rule 2–535(b); *Platt v. Platt,* 302 Md. 9, 485 A.2d 250 (1984). No ground under Rule 2–535(b) for revising the judgment is asserted here.

FL § 8–105(b) states that a court may modify any provision of an agreement that is incorporated into a divorce decree, and that statute is expressly retroactive. Acts of 1990, Chapter 443, SEC. 2. But the power is expressly limited to any provision that is "subject to modification under § 8–103...." FL § 8–105(b)(2). The power is not exercisable here because we have held in Part I, *supra,* that the alimony provision of the Agreement is not modifiable, except as provided in the Agreement.[10]

*Lieberman* is not authority for modifying an enrolled judgment, absent a statutory authorization to do so. That opinion construed a payment provision in order to determine the amount originally allocated to child support and the amount originally allocated to spousal support. The judgment under direct review in *Lieberman* was an appealable interlocutory judgment for the payment of money. *See* Md.Code (1974, 1995 Repl.Vol.), § 12–303(3)(v) of the Courts and Judicial Proceedings Article.

Here, the circuit court denied Mr. Shapiro's claim to decrease child support, except for the set-off of college expenses

---

10. We express no opinion on whether the modification contemplated by FL § 8–103(c)(2) extends beyond modifying the amount of the alimony or spousal support payment, *e.g.,* by changing the legal character or nature of the payment from spousal support to child support.

against alimony and child support. Because the denial of any downward modification of child support was in part predicated on the validity of the set-off against the alimony payments, which we have reversed, the remand to the circuit court for further proceedings, previously ordered by the Court of Special Appeals, will include consideration of possible downward revisions of child support.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THAT COURT FOR THE ENTRY OF AN ORDER AFFIRMING IN PART AND REVERSING IN PART THE JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY AND REMANDING THIS ACTION TO THE CIRCUIT COURT FOR HOWARD COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION AND, AS TO THE APPLICATION OF CHILD SUPPORT GUIDELINES, WITH THE OPINION OF THE COURT OF SPECIAL APPEALS. COSTS IN THIS COURT TO BE PAID BY THE RESPONDENT, DAVID L. SHAPIRO. COSTS IN THE COURT OF SPECIAL APPEALS TO BE EQUALLY DIVIDED BETWEEN THE PARTIES.

ELDRIDGE and RAKER, JJ., dissent.

ELDRIDGE, Judge, dissenting.

The majority's interpretation of Maryland Code (1984, 1991 Repl.Vol.), § 8-103 of the Family Law Article, contradicts the plain language of the statute and presents numerous problems. Furthermore, the majority's interpretation is inconsistent with the history and legislative policy concerning judicial modification of alimony and spousal support agreements.

(1)

Section 8-103 of the Family Law Article states as follows:

" § **8-103.** **Modification of deed, agreement, or settlement.**

"(a) *Provision concerning children.*—The court may modify any provision of a deed, agreement, or settlement with respect to the care, custody, education, or support of any minor child of the spouses, if the modification would be in the best interests of the child.

"(b) *Exception for provision concerning support of spouse.*—The court may modify any provision of a deed, agreement, or settlement with respect to spousal support executed on or after January 1, 1976, regardless of how the provision is stated, unless there is a provision that specifically states that the provisions with respect to spousal support are not subject to any court modification.

"(c) *Certain exceptions for provision concerning alimony or support of spouse.*—The court may modify any provision of a deed, agreement, or settlement with respect to alimony or spousal support executed on or after April 13, 1976, regardless of how the provision is stated, unless there is:

(1) an express waiver of alimony or spousal support; or

(2) a provision that specifically states that the provisions with respect to alimony or spousal support are not subject to any court modification."

Subsections (b) and (c), quoted above, reflect a clear legislative intent favoring broad judicial authority to modify agreements with regard to alimony or spousal support. The opening words of both subsection (b) and subsection (c) broadly authorize a court to modify "any provision" with respect to alimony or spousal support. The language goes on to emphasize the breadth of this authority by saying "regardless of how the provision is stated." Finally, the only exception to a court's modification authority regarding an agreement providing for alimony or spousal support, is narrowly drawn. The exception requires that there be a provision *specifically* stating that "the provisions" concerning alimony or spousal support are not subject to "any" court modification. The word "provisions" is not limited and obviously applies to all of the provisions concerning alimony or spousal support. The Legislature's

rejection of selected or partial modifiability is reinforced by the word "any" preceding the words "court modification."

The majority's decision rests upon the finding of an ambiguity in the phrase "provisions with respect to alimony or spousal support," and specifically the finding that the word "provisions" is ambiguous. The majority discerns an ambiguity in the word "provisions" because the draftperson could "have said, 'unless there is . . . a provision that specifically states that no provision . . . is subject to any court modification.'" (Opinion at 656, 697 A.2d at 1346). Merely because there is an alternative way of saying something, which the author of the majority opinion prefers, does not render the statutory language ambiguous. Very often there are alternative ways of saying something, and neither way is ambiguous.

The majority also relies upon the rule of interpretation, Code (1957, 1994 Repl.Vol.), Art. 1, § 8, that the "singular always includes the plural, and vice versa, except where such construction would be unreasonable." In § 8–103 of the Family Law Article, however, the Legislature carefully used the singular word "provision" to refer to one provision, and the plural word "provisions" to refer to all of the provisions relating to alimony and spousal support. Moreover, the rule of interpretation that the plural includes the singular does not mean that the plural is limited to the singular.

As a matter of plain English, the phrase "provisions of an agreement," without any limitation, includes *all* of the provisions of the agreement. The phrase "provisions with respect to alimony or spousal support," without limitation, means *all* of the provisions with respect to alimony or spousal support. Under normal usage, in speaking of the component parts of any document, whether it is a contract, statute, will, etc., by referring to its "provisions," "words," "clauses," "sections," "language" or similar terms, the use of the plural term without limitation is all inclusive. The phrases "provisions of a contract" or "words of a contract" or "provisions of a statute" or "words of a statute," without any limitation, are normally used to refer to all of the provisions, or all of the words of the

document. One can select at random numerous opinions by this Court which illustrate this usage of language. *See, e.g., Scott v. Ford Motor Credit,* 345 Md. 251, 253–255, 691 A.2d 1320, 1321–1322 (1997) (per Rodowsky, J.) (referring to "the provisions of the loan agreement" to mean all of the provisions; when the author is not referring to all of the provisions of a document or statute, limiting language is used); *Bailer v. Erie Insurance,* 344 Md. 515, 536, 687 A.2d 1375, 1385–1386 (1997) (Chasanow, J., dissenting) (refers to "provisions of an insurance contract" to mean "[a]ll of the provisions of this contract"); *Polomski v. Baltimore,* 344 Md. 70, 75, 684 A.2d 1338, 1340 (1996) (per Karwacki, J.) (refers to "the language of the statute" to mean all of the language); *Fraternal Order of Police v. Mehrling,* 343 Md. 155, 174, 680 A.2d 1052, 1062 (1996) (to the same effect); *Ward v. Property & Casualty,* 325 Md. 1, 8, 599 A.2d 81, 84 (1991) (per Rodowsky, J.) (uses the phrase "words of the statute" to refer to all of the words).

The majority's holding that court modifiability of alimony or spousal support depends on the wording of each "provision by provision" relating to alimony or spousal support (opinion at 658, 697 A.2d at 1347), also overlooks the language in § 8–103 stating that *any* provision relating to alimony or spousal support is judicially modifiable "regardless of how the provision is stated...." The General Assembly thus made it clear that the wording of a particular provision concerning alimony or spousal support was immaterial. Rather, judicial modifiability of any provision could be precluded only if there was a specific statement that the provisions, without limitation, could not be judicially modified.[1]

---

1. The majority's only discussion of the clause "regardless of how the provision is stated," is to say that "[u]nder this clause the distinction previously made between technical alimony and contractual support becomes irrelevant for purposes of applying § 8–103(c)." (Opinion at 656, 697 A.2d at 1346). The earlier language, at the beginning of the sentence, however, that "[t]he court may modify any provision ... with respect to alimony *or spousal support* " (emphasis added), effectively does away with the former technical difference between alimony and contractual spousal support. Although the subsequent clause "regardless of how the provision is stated" would also accomplish this, the

The normal meaning of the words in § 8–103 clearly refutes the majority's holding that parties may make an alimony or spousal support agreement "partially" modifiable by a court on a "provision by provision" basis. Instead, as held by the Court of Special Appeals in *Langley v. Langley*, 88 Md.App. 535, 540, 596 A.2d 89 (1991),

> "[s]ection 8–103(c) is unambiguous. By its own terms, § 8–103(c) authorizes the court to modify spousal support agreements. Exempt are only those agreements containing a waiver of support, § 8–103(c)(1) or a *specific* statement that support is not subject to *any* court modification § 8–103(c)(2)."

Judge Karwacki for the Court recently summarized the principle which should be dispositive here (*Polomski v. Baltimore, supra*, 344 Md. at 75, 684 A.2d at 1340):

> "In construing any statute, our principle mission is to effectuate the intent of the Legislature. *Bowen v. Smith*, 342 Md. 449, 454, 677 A.2d 81, 83 (1996); *Soper v. Montgomery County*, 294 Md. 331, 335, 449 A.2d 1158, 1160 (1982). The primary source of that intent is the language of the statute itself. *Bowen*, 342 Md. at 454, 677 A.2d at 83.
>
> \* \* \*
>
> "When ... the language of the statute is clear, further analysis of legislative intent ordinarily is not required, *Rose v. Fox Pool*, 335 Md. 351, 359, 643 A.2d 906, 910 (1994); *Scaggs v. Baltimore & W.R. Co.*, 10 Md. 268 (1856), and we give the words of the statute their ordinary and common meaning within the context in which they are used, *Kaczorowski*, 309 Md. at 514, 525 A.2d at 632."

In *Polomski*, 344 Md. at 80, 84, 684 A.2d at 1343, 1345, we held that the statutory language there before the Court "is unmistakably clear" and that "[w]e agree with the intermediate appellate court that the clear language of [the statute]

---

clause is much broader. It indicates that the wording of each provision by provision does not determine judicial modifiability.

negated the need to look elsewhere for its meaning." Similarly, with regard to § 8–103 of the Family Law Article, the statutory language is unmistakably clear, and we should agree with the intermediate appellate court in the *Langley* case. The Legislature unambiguously stated that *any* provision with respect to alimony or spousal support is subject to court modification unless the parties specifically stated that the *provisions* regarding alimony or spousal support are not subject to *any* court modification. Only the most tortured reading could find an ambiguity in this language.

### (2)

The ambiguity and difficulty in this case, instead of being in the statutory language, lies in the majority's interpretation. The majority, in the earlier portion of its opinion dealing with the statutory language, focuses upon the words "provision" and "provisions," states that judicial modifiability need not be an "all or nothing approach," and indicates that "the parties may contract concerning court modifiability ... provision by provision." (Opinion at 655–658, 697 A.2d at 1345–1347). The majority illustrates its interpretation by an hypothetical agreement whereby provision one relates to the initial amount of spousal support and states that it is non-modifiable, provision two concerns a revised amount of spousal support upon the payor's retirement and states that it is non-modifiable, provision three concerns spousal support upon loss of employment and states that it is judicially modifiable under certain circumstances, and provision four deals with spousal support upon disability and states that it can be modified by the court. (Opinion at 656–657, 697 A.2d at 1346–1347). The majority seems to conclude that this "provision by provision" scheme of partial modifiability is "permissible" under the statutory language.

One problem with the majority's interpretation is what constitutes these separate and distinct "provisions"? In the present context, the phrase "provisions of an agreement" has no more specific meaning than the phrases "parts of the agreement" or "clauses of the agreement" or "words of the

agreement." If, as in the majority's hypothetical, there are four separate subjects, set forth in four numbered "provisions," making up the spousal support portion of the agreement, the majority's interpretation might be workable. But not all agreements are so neatly structured. If there are numbered paragraphs, does each one constitute a separate "provision" regardless of subject matter, requiring a statement in each as to judicial modifiability? If there are no numbered or labeled divisions, does a court analyze the agreement for different subjects? What does a court do if there is no correlation between numbered paragraphs and different subjects? The difficulties with the term "provision" and with the majority's interpretation are illustrated by the majority opinion itself. While the earlier portions of the opinion seem to authorize judicial modification on a separate "provision by provision" basis (opinion at 655–658, 697 A.2d at 1345–1347), the majority concludes Part I of its opinion by addressing the agreement in this case and referring to the "spousal support *provision*" in the singular.

Furthermore, the majority's conclusion that the word "provisions" in the statute is ambiguous, and the majority's resulting notion of "partial judicial modifiability" on a "provision by provision" basis, would not appear to support the majority's decision in this case. The case at bar does not present any issue of partial court modification on a provision by provision basis. Instead, we are here dealing with contingent modifiability. Under the appellant Debra Shapiro's position, the entire agreement relating to alimony or spousal support is modifiable if the disability contingency occurs and the entire agreement relating to alimony or spousal support is non-modifiable if the disability contingency does not occur.

The present case does not involve the situation posed by the majority's hypothetical, under which certain provisions concerning certain subjects are made modifiable and other provisions concerning other subjects are made non-modifiable. The alimony portion of the agreement in this case contains separate paragraphs, identified by the letters (a), (b), etc., dealing with several subjects. Some of the paragraphs seem to deal

with more than one matter. Paragraph (a), for example, sets forth the amount of monthly "alimony" from May 1, 1988, to January 1, 2009. Paragraph (a) also provides for termination of alimony upon either the death of the wife or the death of the husband. Paragraph (b) provides for the amount of monthly alimony from and after January 1, 2009, again provides for termination upon the deaths of either, and provides for termination upon the remarriage of the wife. Paragraph (d) relates to deductibility and declarations of income on the husband's and wife's income tax returns. None of these paragraphs contains a provision relating to modifiability. Then, the final paragraph of the spousal support agreement seems to authorize complete modifiability in the event of the husband's disability. Thus, the issue in this case seems to have no relation to the alleged ambiguity in the word "provisions" discovered by the majority, and has no relation to partial modifiability on a provision by provision basis.

Since the agreement in this case provided that it was totally modifiable if a certain contingency occurred, and since, under the statutory language, total judicial modification is authorized if any part of the alimony or spousal support agreement is subject to judicial modification, the alimony or spousal agreement in the case before us is clearly subject to judicial modification.

(3)

Not only is the majority's "partial modification" theory flatly inconsistent with the unambiguous language of § 8–103, but the majority's theory cannot be squared with the history and legislative background of the statute.

Until the filing of the majority's opinion today, the concept of "partial judicial modifiability" of alimony or a spousal support agreement was entirely unknown to Maryland law. Prior to January 1, 1976, as well as after that date with regard to any agreements entered into before 1976, the right of a court to modify the spousal support portion of a separation agreement depended upon whether the spousal support agree-

ment was incorporated in a judicial decree and constituted "alimony" in a technical sense.

"Alimony" has been defined in numerous Maryland cases, and most recently in *Horsey v. Horsey*, 329 Md. 392, 410, 620 A.2d 305, 314–315 (1993), as follows (emphasis added):

> " 'Alimony' in a legal sense (often referred to as 'technical alimony') is a periodic allowance for spousal support, *payable under a judicial decree*, which terminates upon the death of either spouse or upon the remarriage of the spouse receiving the payments or upon the reconciliation and cohabitation of the parties. *See, e.g., Thomas v. Thomas*, 294 Md. 605, 614–621, 451 A.2d 1215, 1221–1223 (1982); *Goldberg v. Goldberg*, 290 Md. 204, 207–210, 428 A.2d 469, 472–473 (1981).... A court exercising equitable jurisdiction has authority to modify its prior award of technical alimony. *Goldberg v. Goldberg*, 290 Md. at 209, 428 A.2d at 473...."

Where the spousal support agreed upon by the parties possessed all of the characteristics of "alimony," and where it was incorporated in a judicial decree, it became "alimony" awarded by the judicial decree. It could later be modified by a court because of the settled principle that a court award of alimony was always subject to judicial modification. The basis for the spousal support award under these circumstances, and the basis for later judicial modification, was not that the parties had entered an agreement. Instead, the validity of the award, and the ability to modify it, rested upon the judicial decree providing alimony. *See Horsey v. Horsey, supra*, 329 Md. at 412, 620 A.2d at 315–316; *Emerson v. Emerson*, 120 Md. 584, 591–597, 87 A. 1033, 1036–1038 (1913) ("the validity of the award depends not upon the agreement, but upon the judgment or decree" and the court "has the same power of modification of the decree as it had in the absence of an agreement").

Where, however, a spousal support agreement entered prior to 1976 did not have all of the characteristics of alimony, it was not subject to any judicial modification. Such contractual

spousal support could not be judicially modified even if it was incorporated into a judicial decree or even if the parties stated that it should be "merged" into the decree. *Horsey v. Horsey, supra,* 329 Md. at 411–417, 620 A.2d at 315–318. The reason for this rule was the traditional doctrine, emphasized in the majority opinion, that parties ordinarily should be free to contract as they wish, and that such "spousal support payments, ... being contractual in nature, are not subject to change absent assent of the parties, notwithstanding the fact that they have been incorporated into a divorce decree." *Goldberg v. Goldberg, supra,* 290 Md. at 209, 428 A.2d at 473. Nevertheless, this traditional contract doctrine was not applicable to alimony, as "[t]echnical alimony can only be provided by decree of court." *Ibid.*

In sum, prior to 1976 no spousal support agreement incorporated into a judicial decree was subject to partial judicial modification. If the agreement incorporated into a decree constituted alimony, it was fully subject to subsequent judicial modification because judicial decrees of alimony had always been subject to modification. If the incorporated agreement did not have all of the characteristics of alimony, it was not subject to any subsequent judicial modification on the ground that courts generally do not modify contractual obligations.

In 1975 and 1976, the General Assembly changed the law to give courts much greater authority to modify spousal support agreements. Departing from the traditional contract principles on which the former law was based, the Legislature in § 8–103 of the Family Law Article provided that both alimony and non-alimony contractual spousal support were subject to judicial modification. The statutory language itself demonstrates a policy favoring judicial modification of agreements and restricting traditional contract principles. Under § 8–103(c), a court is broadly authorized to modify "any provision" concerning alimony or contractual spousal support, "regardless" of the parties' intent reflected in the wording of that provision. In addition, as discussed in the beginning of this opinion, the only exception to the court's modification authority is very narrowly drawn. The majority opinion, with its

reliance on traditional contract principles, wholly fails to give effect to the Legislature's clear purpose of greatly increasing judicial modification authority. The General Assembly obviously believed that, in the context of spousal support, courts should have broader power to modify agreements because of changed circumstances, fairness, unequal bargaining power, etc.[2] Regardless of the majority's view of this policy, this Court should give effect to the legislative intent.

Although the General Assembly, in enacting § 8–103, intended to enlarge the authority of courts to modify spousal support agreements, there is utterly no indication from the statutory language or the legislative history that the Legislature intended to change the traditional principle that a spousal support agreement was either wholly modifiable or not modifiable at all. The majority opinion states that it discerns no legislative "intent to perpetuate the all or nothing approach to modifiability that characterized that prior law." (Opinion at 664, 697 A.2d at 1350). If the statutory language and legislative history were silent on this issue, as the majority apparently believes, the normal presumption would be that the Legislature did not intend to change the law. Moreover, as shown in Part (1) of this dissent, the statutory language is clearly inconsistent with any notion of partial modifiability of a spousal support agreement.

Another strong indication that the Legislature did not intend to adopt the majority's novel "partial modification" theory is the legislative acquiescence in the holding of *Langley v. Langley, supra,* 88 Md.App. 535, 596 A.2d 89. We have often pointed out that, where the General Assembly has acquiesced in the judicial construction of a statute, there is a strong presumption that the legislative intent has been correctly interpreted. Although the principle is ordinarily applicable only when the construction of the statute was by this Court, *United States v. Streidel,* 329 Md. 533, 551 n. 12, 620 A.2d 905, 914 n. 12 (1993), there are exceptions where the principle has

---

**2.** *See* S. Sharp, *Fairness Standards and Separation Agreements: A Word of Caution on Contractual Freedom,* 132 U. Pa. L.Rev. 1399 (1984).

been applied to constructions of a statute by other entities. *See, e.g., Prince George's County v. Brown,* 334 Md. 650, 660, 640 A.2d 1142, 1147 (1994); *State v. Crescent Cities Jaycees,* 330 Md. 460, 470, 624 A.2d 955, 960 (1993).

In the particular area of family law involved in this case, the General Assembly has changed the law to overrule statutory interpretations by the Court of Special Appeals with which the General Assembly disagreed. *See* § 8–105 of the Family Law Article, overruling *Mendelson v. Mendelson,* 75 Md.App. 486, 541 A.2d 1331 (1988), and the Floor Report of the Senate Judicial Proceedings Committee on Senate Bill 541 of the 1989 General Assembly ("This bill is expressly intended to overrule the holding of the Court of Special Appeals in *Mendelson v. Mendelson,* 75 Md.App. 486, 541 A.2d 1331 (1988)"). Nevertheless, the Court of Special Appeals' construction of § 8–103 in *Langley v. Langley, supra,* has not been modified by the General Assembly. In light of this legislative acquiescence, this Court should not now overrule *Langley* and adopt, for the first time in Maryland history, the doctrine that a spousal support agreement incorporated in a court decree may be partially modifiable by a court.

The majority's novel and confusing interpretation of § 8–103 of the Family Law Article finds no support in either the language or history of the statute. I would reaffirm the interpretation of § 8–103 set forth six years ago in the *Langley* case and accepted by the General Assembly.

RAKER, J., concurs with the views expressed herein.